-----------------------

COLLECTIVE BARGAINING AGREEMENT

between

NORTH OTTAWA COMMUNITY HOSPITAL

and

NORTH OTTAWA COMMUNITY HOSPITAL EMPLOYEES ASSOCIATION

-----------------------

October 24, 2018 through June 30, 2021

-----------------------

i

**Admin Hrng Exh - Joint 6**

APR 3 - 2024

## Table of Contents

Page

PREAMBLE ................................................................................................................................ 1

ARTICLE 1.  PURPOSE AND INTENT.................................................................................. 1

ARTICLE 2.  RECOGNITION .............................................................................................. 1

Section 1. .................................................................................................................... 1

ARTICLE 3.  DEFINITIONS.................................................................................................. 2

Section 1.  Definitions............................................................................................... 2
(A)   "Full-time employee" ....................................................................................... 2
(B)   "Regular part-time employee" ........................................................................ 2
(C)   "Temporary or occasional or casual employees" ........................................... 2
(D)   "Per diem employee" ........................................................................................ 2
(E)   Gender ............................................................................................................... 3
(F)   Discipline ........................................................................................................... 3
(G)   Manager or Assistant Manager ........................................................................ 3

ARTICLE 4.  ASSOCIATION REPRESENTATION ............................................................ 3

Section 1. .................................................................................................................... 3

ARTICLE 5.  DUES CHECK-OFF ........................................................................................ 3

Section 1.  Check-Off................................................................................................. 3
Section 2.  Indemnification........................................................................................ 4
Section 3.  Copies of Agreement............................................................................... 5

ARTICLE 6.  MANAGEMENT RIGHTS ............................................................................. 5

Section 1. .................................................................................................................... 5
Section 2. .................................................................................................................... 5
Section 3. .................................................................................................................... 5

ARTICLE 7.  GRIEVANCE PROCEDURE .......................................................................... 5

Section 1.  Grievance Defined................................................................................... 5
Section 2.  Grievance Representation........................................................................ 6
Section 3.  Grievance Process.................................................................................... 6
Step One..................................................................................................................... 6
Step Two..................................................................................................................... 6
Step Three................................................................................................................... 6
Step Four..................................................................................................................... 7
Section 4.  Definitions................................................................................................ 8
Section 5.  Time Limits. ............................................................................................. 8
Section 6.  Individual Representation........................................................................ 8

ARTICLE 8.  SENIORITY .................................................................................................... 8

Section 1.  Seniority................................................................................................... 8
Section 2.  Probationary Employees. ........................................................................ 9
Section 3.  Seniority List. .......................................................................................... 10
Section 4.  Loss of Seniority...................................................................................... 10

ARTICLE 9.  VACANCIES AND PROMOTIONS................................................................10

Section 1. Vacancies and New Positions. ................................................................................................ 10
Section 2. Placement and Promotions. .................................................................................................. 11
Section 3. Trial Period and Re-Bidding. .................................................................................................. 11

**ARTICLE 10. LEAVES OF ABSENCE** ......................................................................................................... **11**

Section 1. Jury Leave. ........................................................................................................................... 11
Section 2. Court/Witness Leave. ........................................................................................................... 12
Section 3. Military Leave. ...................................................................................................................... 12
Section 4. Bereavement Leave. ............................................................................................................. 12
Section 5. Medical Leave, Personal Leave or Adoption Leave. ............................................................... 13
(A)    Medical Leave. ............................................................................................................................ 13
(B)    Personal Leave. ........................................................................................................................... 13
(C)    Adoption Leave............................................................................................................................ 14
(D)    Provisions Applying to Medical Leaves, Personal Leaves and Adoption Leaves........................... 14
Section 6. Family and Medical Leave Act. .............................................................................................. 15

**ARTICLE 11. PAID TIME OFF** ................................................................................................................. **15**

Section 1. Paid Time Off. ....................................................................................................................... 15
Section 2. Conversion from Traditional Banks to PTO. .......................................................................... 19

**ARTICLE 12. PAID HOLIDAYS** ................................................................................................................ **19**

Section 1. Paid Holidays. ....................................................................................................................... 19
Section 2. Eligibility for Holiday Pay. ..................................................................................................... 20
Section 3. Holiday Pay. .......................................................................................................................... 20
Section 4. Alternate Day Off: ................................................................................................................. 21
Section 5. Regular Part-Time Employees: ............................................................................................. 21

**ARTICLE 13. INSURANCE** ...................................................................................................................... **22**

Section 1. Hospital - Medical Program. ................................................................................................. 22
(A)    Eligibility: ................................................................................................................................... 22
(B)    Programs, Coverage, and Terms:  The group hospital-medical program(s) provided ................. 22
(C)    Foreign Claims: ........................................................................................................................... 22
(D)    Payment: ..................................................................................................................................... 22
Section 2. Dental Insurance. ................................................................................................................. 24
(A) Eligibility: ...................................................................................................................................... 24
(B)    Coverage ..................................................................................................................................... 24
(C)    Payment ...................................................................................................................................... 24
Section 3. Life Insurance ....................................................................................................................... 24
(A)    Eligibility. .................................................................................................................................... 24
(B)    Coverage ..................................................................................................................................... 24
(C)    Payment ...................................................................................................................................... 25
Section 4. Short-Term Disability Insurance ........................................................................................... 25
Section 5. Long-Term Disability Insurance ............................................................................................ 25
(A)    Eligibility. .................................................................................................................................... 25
(B)    Coverage ..................................................................................................................................... 25
Section 6. Insurance Carriers ................................................................................................................ 25
Section 7. Benefits in Accordance With Policies .................................................................................... 25
Section 8. Continuation/Termination of Insurance Coverage ................................................................ 25

**ARTICLE 14. PENSION/RETIREMENT PLAN** ........................................................................................... **26**

Section 1. ............................................................................................................................................. 26
Section 2. ............................................................................................................................................. 27

**ARTICLE 15.  CONTINUING EDUCATION** ........................................................................**27**

    SECTION 1.  IN-SERVICE EDUCATION. ...................................................................... 27
    SECTION 2.  EMPLOYER-REQUIRED OR EMPLOYEE-REQUESTED EDUCATION. ............................ 27
    SECTION 3.  COMPUTER ON-LINE TRAINING. ............................................................... 28
    SECTION 4.  EDUCATIONAL REIMBURSEMENT: ............................................................. 28

**ARTICLE 16.  LAYOFF AND RECALL** ............................................................................**29**

    SECTION 1.  LAYOFF. ....................................................................................... 29
    SECTION 2.  BUMPING UPON LAYOFF. ...................................................................... 30
    SECTION 3.  RECALL. ....................................................................................... 31
    SECTION 4.  NEW HIRES DURING LAYOFF. .................................................................. 32

**ARTICLE 17.  WORKING HOURS AND SCHEDULES** ...........................................................**32**

    SECTION 1.  WORK DAY. .................................................................................... 32
    SECTION 2.  WORK PERIOD. ................................................................................ 32
    SECTION 3.  WORK SCHEDULES. ............................................................................ 32
    SECTION 4.  LATE ARRIVAL. ................................................................................ 33
    SECTION 5.  EARLY DEPARTURE. ........................................................................... 33
    SECTION 6.  PENALTY. ...................................................................................... 33
    SECTION 7.  TIME RECORD. ................................................................................. 34
    SECTION 8.  NOTIFICATION OF ABSENCE. ................................................................... 34
    SECTION 9.  LUNCH PERIODS. .............................................................................. 34
    SECTION 10.  REST PERIODS. ............................................................................... 34
    SECTION 11.  EMERGENCY WORK. .......................................................................... 34
    SECTION 12.  SHARING WEEKENDS, ETC. ................................................................... 34
    SECTION 13.  CREATIVE/FLEXIBLE SCHEDULES. ............................................................ 34

**ARTICLE 18.  OVERTIME AND PREMIUM PAY** ................................................................**35**

    SECTION 1.  DAILY OVERTIME. .............................................................................. 35
    SECTION 2.  PAY PERIOD OVERTIME. ....................................................................... 35
    SECTION 3.  CREATIVE/FLEXIBLE SCHEDULE OVERTIME. ................................................... 35
    SECTION 4.  DOUBLE SHIFT OVERTIME. ..................................................................... 35
    SECTION 5.  NO PYRAMIDING OF OVERTIME AND/OR PREMIUM PAY. ...................................... 36
    SECTION 6.  PREMIUM PAY FOR HOLIDAY WORK. .......................................................... 36
    SECTION 7.  SCHEDULED "ON-CALL." ...................................................................... 36
    SECTION 8.  UNSCHEDULED CALL-IN. ....................................................................... 36
    SECTION 9.  SHOW-UP TIME. ............................................................................... 37
    SECTION 10.  MEAL PERIODS. ............................................................................... 37
    SECTION 11.  SHIFT DIFFERENTIALS. ....................................................................... 37
    SECTION 12.  WEEKEND PREMIUM. ......................................................................... 37
    SECTION 13.  PARAMEDIC CHARGE PREMIUM. ............................................................. 38
    SECTION 14.  COAST GUARD PREMIUM. .................................................................... 38
    SECTION 15.  LEAD TECHNICIAN PREMIUM. ................................................................ 38

**ARTICLE 19.  PAY PERIOD AND PAY DAY** ....................................................................**38**

    SECTION 1. ................................................................................................. 38

**ARTICLE 20.  BULLETIN BOARDS** .............................................................................**38**

    SECTION 1. ................................................................................................. 38
    SECTION 2. ................................................................................................. 38
    SECTION 3. ................................................................................................. 38

iv

SECTION 4. .................................................................................................................................. 38

**ARTICLE 21.  SAFETY AND HEALTH** ..................................................................................... **39**

SECTION 1. ................................................................................................................................. 39
SECTION 2. ................................................................................................................................. 39
SECTION 3. ................................................................................................................................. 39
SECTION 4. ................................................................................................................................. 39
SECTION 5. ................................................................................................................................. 39
SECTION 6. ................................................................................................................................. 39

**ARTICLE 22.  UNIFORM** ........................................................................................................... **40**

SECTION 1. ................................................................................................................................. 40
SECTION 2. ................................................................................................................................. 40
SECTION 3. ................................................................................................................................. 40
SECTION 4. ................................................................................................................................. 40

**ARTICLE 23.  WAGES** ............................................................................................................... **40**

SECTION 1. WAGE SCHEDULE. ................................................................................................. 40
SECTION 2. NEW HIRES/PREVIOUS EXPERIENCE. ................................................................. 40
SECTION 3. FULL-TIME EMPLOYEES/PROGRESSION ON SCHEDULE. .................................. 40
SECTION 4. PART-TIME EMPLOYEES/PROGRESSION ON SCHEDULE. .................................. 41
SECTION 5. EFFECT OF PERFORMANCE. ................................................................................. 41
SECTION 6. WORKING OUTSIDE CLASSIFICATION. ................................................................. 41
SECTION 7. TRANSFER OR PROMOTION. ................................................................................. 41
SECTION 8. LONGEVITY BENEFIT. ............................................................................................ 41

**ARTICLE 24.  NO STRIKE** ......................................................................................................... **42**

SECTION 1. ................................................................................................................................. 42
SECTION 2. ................................................................................................................................. 42

**ARTICLE 25.  CONFIDENTIAL INFORMATION** ...................................................................... **42**

SECTION 1. ................................................................................................................................. 42

**ARTICLE 26.  PERFORMANCE EVALUATION** ........................................................................ **42**

SECTION 1. ................................................................................................................................. 43
SECTION 2. ................................................................................................................................. 43
SECTION 3. ................................................................................................................................. 43
SECTION 4. ................................................................................................................................. 43
SECTION 5. ................................................................................................................................. 43

**ARTICLE 27.  CHANGE IN PERSONAL STATUS; NOTICE; LICENSE** ................................... **43**

SECTION 1. ................................................................................................................................. 43
SECTION 2. ................................................................................................................................. 43
SECTION 3. ................................................................................................................................. 44

**ARTICLE 28.  EMPLOYEE IDENTIFICATION** .......................................................................... **44**

SECTION 1. ................................................................................................................................. 44

**ARTICLE 29.  SPECIAL CONFERENCES** ................................................................................ **44**

SECTION 1. ................................................................................................................................. 44

**ARTICLE 30. MISCELLANEOUS PROVISIONS** ................................................................**44**

    SECTION 1. CAPTIONS. .......................................................................................... 44

    SECTION 2. SEVERABILITY. ..................................................................................... 45

    SECTION 3. HOSPITAL HEALTH SERVICES. ................................................................ 45

    SECTION 4. PHARMACY DISCOUNT. ........................................................................ 45

    SECTION 5. MILEAGE REIMBURSEMENT. .................................................................. 45

    SECTION 6. LIABILITY INSURANCE. .......................................................................... 45

    SECTION 7. PAYROLL DEDUCTIONS.  (A) EMPLOYEES MAY, PURSUANT TO WRITTEN, SIGNED AND DATED ...................... 45

    SECTION 8. RETURN OF PROPERTY ......................................................................... 46

**ARTICLE 31. ENTIRE AGREEMENT** ..............................................................................**46**

    SECTION 1. ......................................................................................................... 46

    SECTION 2. ......................................................................................................... 46

**ARTICLE 32. DURATION OF AGREEMENT** .....................................................................**46**

**APPENDIX A** ......................................................................................................**49**

**APPENDIX B** ......................................................................................................**51**

**APPENDIX B-1** ...................................................................................................**52**

**APPENDIX B-2** ...................................................................................................**53**

**APPENDIX B-3** ...................................................................................................**54**

**APPENDIX C** ......................................................................................................**55**

**APPENDIX D-1** ...................................................................................................**57**

**APPENDIX D-2** ...................................................................................................**58**

vi

PREAMBLE

THIS AGREEMENT, by and between NORTH OTTAWA COMMUNITY HOSPITAL of Grand Haven, Michigan (for purposes of convenience sometimes hereinafter called the "Employer") and NORTH OTTAWA COMMUNITY HOSPITAL EMPLOYEES ASSOCIATION (for purposes of convenience sometimes hereinafter called the "Association"), shall take effect as of October 24, 2018 and continue through June 30, 2021.

The Employer and the Association further agree as follows:

## ARTICLE 1.  PURPOSE AND INTENT

The general purpose and intent of this Agreement is to set forth the wages, hours and other terms and conditions of employment which shall prevail for the duration of this Agreement, and to promote orderly and harmonious labor relations for the mutual interest of the Employer, the employees, the Association, and the patients.  The Employer and the Association, for and in consideration of the mutual promises, stipulations and conditions hereinafter specified, agree to abide by the terms and provisions set forth herein for the duration of this Agreement.

## ARTICLE 2.  RECOGNITION

Section 1.    The Employer hereby recognizes the Association as the exclusive representative for purposes of collective bargaining in respect to rates of pay, wages, hours of employment and other terms and conditions of employment at the Employer's Grand Haven, Michigan Hospital and its Grand Haven, Michigan locations of Dunewood Pharmacy, North Ottawa Family Practice, North Ottawa Women's Health, Dunewood Family Practice, and West Michigan Sports and Family Medicine, of the following employees:

(a)    All full-time and regular part-time employees in the following nursing departments: Emergency, Intensive Care-Coronary Unit, Med.-Surg., Family Birthing Unit, Pediatrics, Surgery, Emergency Medical Services (excluding Secondary Emergency Medical Technicians), Social Service, Physician Practice, and Central Processing Department; but excluding the Vice President/Nursing Service, all House Supervisors (whether full-time or part-time), all Nurse Managers, Managers, and/or Assistant Managers, all registered nurses, all confidentials (including Secretary to the Vice President/Nursing Service), all temporary employees (including "occasional or casual" employees), all "per diem" employees, all student trainees and volunteers, all other employees, and all supervisors as defined in the Act;

(b)    All full-time and regular part-time employees in the following technical departments: Respiratory Therapy, Laboratory, Medical Imaging, and Pharmacy; but excluding all Managers, all Assistant Managers, all confidentials, all temporary employees (including "occasional or casual" employees), all "per diem" employees, all student trainees and volunteers, all other employees, and all supervisors as defined in the Act; and

1

(c) All full-time and regular part-time employees in the following <u>service departments</u>: Patient Registration, Patient Accounting, Medical Records, Housekeeping, Food Service, Maintenance, Materials Management and Volunteer Services (Ambassador only); <u>but excluding</u> the Vice President/Fiscal Services, all Managers, all Assistant Managers, the Payroll Coordinator, the Food Service Supervisors, all confidentials (including the Secretary to the Vice President/Fiscal Services and the Accounts Payable person), Accountants, all temporary employees (including "occasional or casual" employees), all "per diem" employees, all student trainees and volunteers, all other employees, and all supervisors as defined in the Act, and further excluding all employees of the Human Resources Department, the Ancillary Services/Marketing Department, the Administration Department, and the Volunteer Services Department (except Ambassador).

## ARTICLE 3. <u>DEFINITIONS</u>

<u>Section 1. Definitions</u>. As used in this Agreement, unless a contrary meaning is expressly provided or necessarily implied, the following terms shall have the following meanings:

(a) <u>"Full-time employee"</u> shall mean an employee hired for an indefinite period who is regularly scheduled for and normally works an average of eighty (80) hours or more in any fourteen (14) day payroll period.

(b) <u>"Regular part-time employee"</u> shall mean an employee hired for an indefinite period who is regularly scheduled for and normally works an average of thirty (30) hours or more, but less than eighty (80) hours, in any fourteen (14) day payroll period.

(c) <u>"Temporary or occasional or casual employees"</u>:

(i) <u>"Temporary employee"</u> shall mean an employee who is hired to fill a permanent job on a temporary basis until a qualified regular employee is hired, or one who is hired to work on a special project, or one who is hired to work during the absence of a regular employee; provided, however, that if an employee remains in the same position (i.e. same classification and department) for a continuous period of one hundred eighty (180) consecutive calendar days, the position will no longer be deemed temporary but will instead be either posted or abolished.

(ii) <u>"Occasional or casual employee"</u> shall mean an employee who is not regularly scheduled to work but may be called in to fill a particular need of the Employer, or an employee who is regularly scheduled for and normally works less than an average of thirty (30) hours in any fourteen (14) day payroll period.

(d) <u>"Per diem employee"</u> shall mean an employee who enters into a per diem agreement with the Employer pursuant to which the employee is committed to be available to work a specified number of shifts per month and for which the employee will receive such compensation as is prescribed by the per diem agreement (i.e. without regard to the terms and provisions of this Agreement).

2

(e)    <u>Gender</u>:  Use of pronouns or other terms referring to the male gender shall include the female gender, and use of pronouns or other terms referring to the female gender shall include the male gender.

(f)    <u>Discipline</u>:  As used in this Agreement, the terms "discipline" or "disciplined" shall include any form of discipline up to and including discharge.

(g)    <u>Manager or Assistant Manager</u>:  Whenever in this Agreement the term "Manager" or "Assistant Manager" is used, the term may also mean and include a "Clinical Coordinator" or other comparable managerial/supervisory designation.


## ARTICLE 4.  <u>ASSOCIATION REPRESENTATION</u>

<u>Section</u> 1.    The Employer agrees to recognize an Association Negotiating Team composed of not more than five (5) members (including employees and any outside representatives), plus one (1) other person to serve as secretary to the Association's Negotiating Team.  The Association shall furnish to the Employer a written list of the members of the Negotiating Team, and shall advise the Employer in writing of any changes in such membership and of any alternate members of the Negotiating Team.  No Negotiating Team member or alternate shall function as such until the Employer has been so advised by the Association.  The Negotiating Team shall represent the Association in meetings with the Employer for the purpose of collective bargaining and for such other purposes as may be specified in this Agreement.

All such representation by the Negotiating Team shall occur at times which do not conflict with any Negotiating Team member's scheduled working time, unless other arrangements are made in advance, with the express prior approval of the member's Manager or Assistant Manager, for release (without pay) of the member from scheduled working time under circumstances where the Employer will not incur any expense or liability for either overtime or replacement or substitute personnel by reason of such release; provided, however, that if a collective bargaining session between the Employer and the Association is scheduled for a time which does conflict with a Negotiating Team member's scheduled working time, the Employer will, to the extent practical, make an effort to adjust the Negotiating Team member's working schedule (by adjusting hours, shifts, etc.) to allow the member to participate in the collective bargaining session without loss of pay.


## ARTICLE 5.  <u>DUES CHECK-OFF</u>

<u>Section</u> 1. <u>Check-Off</u>.  The Employer agrees to deduct the Association's monthly dues from the pay of Association members, subject to and in accordance with the following terms and provisions:

(a)    As used in this Section, the terms "dues" or "monthly dues" shall be as defined in Section 1(a) of this Article, above.

(b)    The Association may seek to obtain, from an Association member, a completed and signed check-off authorization form which shall conform to the respective state and federal laws concerning that subject (or any interpretations made thereof). The form shall then be filed with the Employer's Human Resources Office which may return an incomplete or incorrectly completed form to the Association's treasurer; and no check-off shall be made until such deficiency is corrected.

(c)    The Employer shall check-off only the Association's monthly dues which are due and payable at the time of check-off; provided, however, that the Employer need not make check-off deductions if, at the time such deductions are made, the employee does not have enough net pay coming, after all other deductions are made, to cover the full amount of the monthly. The Employer will not be responsible to the employee if the employee has duplicated a check-off deduction by direct payment to the Association.

(d)    The Employer will only deduct Association dues from member who has a check-off authorization form on file with the Employer's Human Resources Office for two (2) or more weeks before the payday on which such deductions are made; and all charges made by the Association other than monthly dues, whether in the form of initiation fees, special assessments or otherwise, shall be collected directly by the Association from its members and shall not be deducted by the Employer.

(e)    Any deductions made by the Employer pursuant to this Section shall be made from the paychecks issued on the first (1st) payday of each calendar month. Following such deductions, the Employer shall, before the next month's check-off is made, remit to the Association's treasurer the monthly dues and equivalent service fees (payable to the Association) so deducted, together with a list of the names of the employees from whom such deductions were made.

(f)    The Employer's remittance will be deemed correct if the Association does not give notice, in writing, to the Employer's Human Resources Office within two (2) weeks after a remittance is delivered, of its belief, with reasons stated therefor, that the remittance is incorrect.

(g)    Any employee may terminate his written check-off authorization upon thirty (30) days' prior written notice to the Employer's Human Resources Office and to the Association.

(h)    The Association shall provide at least sixty (60) days' prior written notice to the Employer's Human Resources Office of the amount of monthly Association dues, to be deducted from the wages of employees having submitted check-off authorization forms in accordance with this Section; and any change in the amounts determined will be provided to the Employer's Human Resources Office at least sixty (60) days prior to the effective date of such change.

Section 2. Indemnification. The Association shall indemnify and save the Employer harmless against any and all claims, demands, suits, or other forms of liability arising out of or relating to the Employer's reliance upon or compliance with the Dues Check-Off provisions, or any

other provisions, of this Article. The Association assumes full responsibility for the disposition of all check-off deductions made once they have been sent to the Association.

Section 3. Copies of Agreement. If and to the extent the Association provides sufficient copies of this Agreement at its own expense, the Employer's Human Resources Office shall furnish a copy of this Agreement to new hires within the bargaining unit. The Association may provide a one-page summary of the terms and conditions of the Agreement to the Human Resources office to be distributed to new hires within the bargaining unit, to be placed in the new employee packet for those employees with a brief introduction by Human Resources.

## ARTICLE 6. MANAGEMENT RIGHTS

Section 1. Except as in this Agreement otherwise specifically provided, the Employer retains the sole and exclusive right to manage and operate the Hospital in all of its operations and activities. Among the rights of management, included only by way of illustration and not by way of limitation, is the right to determine all matters pertaining to the services to be furnished and the methods, procedures, means, equipment, and machines required to provide such services; to establish classifications of work and the number of personnel required; to determine the nature and number of facilities and departments to be operated and their location; to transfer and subcontract work; to direct and control operations; to maintain order, discipline and efficiency; to make all financial decisions; to continue or discontinue its operations; to study and use different or improved methods and equipment; and in all respects to carry out the ordinary and customary functions of management.

Section 2. Except as in this Agreement otherwise specifically provided, the Employer shall also, without limitation, have the right to hire, promote, demote, assign, transfer, suspend, discipline or discharge for just cause, layoff, recall, relieve, and retire (at an appropriate age) personnel; to establish work rules, policies, procedures and regulations, and to establish penalties for violations of such, up to and including discharge; to make judgments as to ability and skill of employees; to determine workloads, including the quantity and quality of work to be performed by employees; to determine the qualifications and competency of employees to perform available work; to establish and change work schedules, including hours and shifts; to establish lunch and rest periods; and to provide and assign relief personnel.

Section 3. The Association recognizes that volunteer organizations and individuals may perform services for the Employer, as a contribution to the welfare of the patients and to the Employer's operation, provided the use of such volunteers does not cause the layoff of bargaining unit employees.

## ARTICLE 7. GRIEVANCE PROCEDURE

Section 1. Grievance Defined. A grievance is defined as an alleged violation, misinterpretation, or misapplication of the terms and provisions of this Agreement.

5

Section 2.  Grievance Representation.        (a) An individual employee having a grievance may, if he so desires, be represented by his shift or department steward with respect to any grievance processed pursuant to this Article.  In the event of a grievance by a group of employees or the Association, all grievance representation shall in such cases be by the Association's chief steward or designated representative.

(b)    All grievance proceedings shall be conducted at times mutually agreeable to all parties involved.  Insofar as reasonably possible, such grievance proceedings shall not conflict with the grievant's and/or steward's scheduled working hours.  If, however, the parties involved agree to conduct grievance proceedings during a grievant's and/or steward's scheduled working hours, then and in such event the grievant and/or steward shall not suffer any loss of pay for scheduled time lost as a result of such grievance proceedings.  It is understood and agreed, however, that no employee shall leave his scheduled work for any grievance proceeding without the prior knowledge and approval of his supervisor.

Section 3.  Grievance Process.        An employee, group of employees or the Association having a grievance shall, before filing a Step One written grievance and as a condition precedent to doing so, discuss the same with the supervisor in an effort to resolve the matter informally.  Such discussion should take place as soon as possible after the grievable occurrence.  In the event such informal discussion does not resolve the grievance, the following procedure shall apply:

Step One.        To be processed hereunder, a grievance must be reduced to writing, state the facts upon which it is based and when they occurred, specify the section(s) of this Agreement which have allegedly been violated and the relief requested, must be signed and dated by the grievant or grievants who are filing the grievance, and must be presented to the supervisor and to the Human Resources Manager within fifteen (15) calendar days after the grievable occurrence; provided, however, that if the grievable occurrence could not have been detected at the time of its occurrence, the grievance must be filed within twenty (20) calendar days after it could have been detected, but not later than thirty (30) calendar days after the grievable occurrence, except that if the grievance relates solely to an alleged pay shortage (i.e. based on the employee's regular rate of pay in relation to his hours worked), then and in such event the grievance must be filed within twenty (20) calendar days after the grievable occurrence could have been detected, but in no event later than six (6) months following the grievable occurrence.  The supervisor shall give a written answer to the grievant(s) within fifteen (15) calendar days after receipt of the written grievance.

Step Two.        If the grievance is not settled in Step One, it may be appealed to Step Two.  In such event the grievant(s) shall serve written notice of appeal upon the appropriate Vice President within fifteen (15) calendar days after the supervisor's written Step One answer.  The appropriate Vice President shall give the grievant(s) a written Step Two answer within fifteen (15) calendar days after receipt of the grievance at this Step.

Step Three.        If the grievance is not settled in Step Two, it may be appealed to Step Three.  In such event the grievant(s) shall serve written notice of appeal upon the President within fifteen (15) calendar days after the appropriate Vice President gave the grievant(s) the written Step Two answer.  The President (or his designee) and the grievant(s) may (at the President's or designee's option) meet to consider the grievance within fifteen (15) calendar days after the President receives

the grievance at this Step. The President (or his designee) shall give the grievant(s) a written answer to the grievance within fifteen (15) calendar days after receipt of the grievance at this Step (if a meeting is not deemed necessary by the President or designee), or within fifteen (15) calendar days after the meeting between the grievant(s) and the President or designee (if a meeting is deemed necessary by the President or designee).

Step Four.    If the grievance is not settled at Step Three, it may be appealed by the Association to Step Four. In such event, the Association shall file a written request for arbitration of the grievance. Such written request by the Association must be served upon the President and upon the American Arbitration Association within fifteen (15) calendar days of the President's Step Three answer.

All such arbitration proceedings shall be subject to all of the following terms and conditions:

(1)    The written request to the American Arbitration Association ("AAA"), for arbitration of the grievance, shall direct the AAA to submit to both the Employer (to the attention of the Human Resources Manager) and to the Association a list containing the names of twelve (12) arbitrators approved by the AAA. Upon receipt of said list, the parties may each strike the name(s) of any arbitrator they are unwilling to accept, and shall numerically rank order (number "1" being highest in preference) those names remaining on the list. Thereafter, the parties shall each return their lists, with any names stricken and all other names rank ordered, to the AAA and the AAA shall be instructed to appoint the arbitrator with the lowest aggregate score, when combining the rankings of the Employer and of the Association, from among the unstricken names. In the event an arbitrator is not able to be selected in this procedure based on the first list, a second list shall be requested.

(2)    The decision of the arbitrator shall be binding upon the Employer, the grievant(s) and the Association;

(3)    Not more than one (1) grievance shall be heard by the arbitrator at any one time;

(4)    The arbitrator shall have no authority to add to, subtract from, disregard, alter or modify any provision or provisions of this Agreement;

(5)    The arbitrator shall not base his decision on state or federal law, but must make his decision solely on the basis of the provisions of this Agreement;

(6)    The arbitrator shall not change or alter any policies, rules and/or actions of the Employer which are not specifically in violation of this Agreement;

(7)    The arbitrator shall not hear any grievance previously barred from the scope of the grievance procedure;

(8)    The arbitrator shall not make any adjustment or settlement of a grievance retroactive more than the date of the grievable occurrence, provided the grievance must be timely filed;

(9)    The arbitrator shall not award any punitive damages;

7

(10)    The arbitrator shall have no authority to award new salary schedules, or to award any monetary adjustments where there has been no wage loss; and

(11)    The costs or expenses of the arbitrator shall be shared equally by the Employer and the Association.  Any costs or expenses individually incurred by the parties, however, including any transcript of an arbitration proceeding ordered by a party, shall be borne by the party incurring the cost or expense.

Section 4.  Definitions.        For purposes of this grievance procedure, the following interpretations and procedures shall apply:

(a)    The term "supervisor," as used in the informal step and in Step One, shall mean the employee's immediate supervisor.  In the absence of another immediate supervisor, however, "supervisor" shall mean the Nurse Manager (in the case of nursing employees), and shall mean the Assistant Manager of the employee's department or, if there is no Assistant Manager, shall mean the Manager (in the case of all other employees).

Section 5.  Time Limits.        (a) Grievances which are not filed in the manner or within the time limits specified in the grievance procedure shall be considered to have been withdrawn or abandoned and shall not be resubmitted.

(b)    Grievances which are not appealed in the manner or within the time limits specified in the grievance procedure shall be considered to have been withdrawn or abandoned and shall not be resubmitted.

(c)    If the Employer fails or neglects to answer a grievance within the time limit specified in the various steps of the grievance procedure, the grievance shall automatically be referred to the next higher step in the grievance procedure.  The time limit for the next higher step will run from the date when the time limit at the step immediately preceding the next higher step expired.

(d)    It is understood and agreed, however, that the time limits specified in the grievance procedure may be extended by mutual agreement in writing between the parties.

Section 6.  Individual Representation.        Notwithstanding the provision of this Article, any individual employee may present a grievance on his own behalf (but only up to and through Step Three) and have the grievance adjusted, without intervention by his steward and/or the Association, if the adjustment is not inconsistent with the terms of this Agreement and if the Association was afforded an opportunity to be present at the time of such adjustment.


ARTICLE 8.  SENIORITY

Section 1.  Seniority.        (a) There shall be three (3) types or categories of seniority, as follows:

8

(i)     <u>Classification Seniority</u> shall be based on and equal to an employee's paid hours in the classification since date of hire into or permanent transfer into the classification.

(ii)    <u>Departmental Seniority</u> shall be based on and equal to an employee's paid hours in the department since date of hire into or permanent transfer into the department.

(iii)   <u>Hospital-Wide Seniority</u> shall be based on and equal to an employee's paid hours for the Employer since date of last hire by the Employer.

(b)     As indicated above, seniority shall be based on paid hours, whether on a full-time or part-time basis.  The term "paid hours," as used in this Article for seniority accrual purposes, shall include: (i) all paid hours <u>except</u> overtime hours and "on call" pay, and (ii) slotted hours (blue card) lost due to an absence compensable by Worker's Compensation relating to the Employer.

(c)     When an employee is temporarily transferred or assigned to a classification or department other than his current primary cost center for payroll purposes (i.e. other than his current official classification and department of record), the employee shall, during the period of such temporary transfer or assignment, continue to accrue seniority in his current primary cost center for payroll purposes (i.e. in his current official classification and department of record).

(d)     Upon permanent transfer out of a classification or department, the employee shall retain, without loss or further accrual, the seniority held by him in the classification or department as of the date of such transfer.  If the employee is subsequently permanently transferred back into a classification or department where he has retained seniority, the employee's seniority shall then continue to accrue from the date of such transfer.

(e)     Seniority shall be applied only as expressly and specifically provided in this Agreement; and the Agreement shall specify the type or category of seniority applicable to the particular provisions of the Agreement where seniority is or may be a factor.

(f)     An employee shall achieve seniority upon successful completion of the probationary period.  At that time, an employee shall be granted seniority based on the employee's paid hours since his last date of hire.

(g)     Subject to the Loss of Seniority provisions of Section 4 of this Article, seniority shall be retained, without loss or further accrual, during approved unpaid leaves of absence or layoffs.

<u>Section 2.  Probationary Employees</u>.  Each employee shall be considered a probationary employee (and shall have no seniority) until such employee has been employed by the Employer and has worked in the bargaining unit for a continuous period of ninety (90) calendar days (in the case of a full-time employee), or for a continuous period of one hundred eighty (180) calendar days (in the case of a part-time employee), following his last date of hire in the bargaining unit. Upon successful completion of the probationary period, an employee shall be granted seniority based on the employee's paid hours since his last date of hire.  During his probationary period, an employee may be laid off or terminated by the Employer at any time and for any reason, without regard to the provisions of this Agreement and without recourse to the grievance procedure.  If the Employer

9

wishes to extend the probationary period in the case of an employee whose performance has not been fully satisfactory in the opinion of the Employer, the Employer may do so for an additional period, not to exceed thirty (30) calendar days, by giving written notice to the employee and the Association.

Section 3. Seniority List. A seniority list or lists, including classification, departmental and Hospital-wide seniority, shall be prepared by the Employer, and a copy shall be supplied to the Association, on or about each April 1st and October 1st. Disputes, if any, regarding seniority lists shall be resolved on the basis of the Employer's official records.

Section 4. Loss of Seniority. Seniority shall be lost and the employment relationship shall end under any of the following conditions:

(a)     The employee resigns or quits;

(b)     The employee is discharged and is not reinstated;

(c)     The employee retires;

(d)     The employee has been on layoff for a period of one (1) year;

(e)     The employee is on leave of absence for illness, injury or disability (paid or unpaid) for a period of one (1) year; provided, however, that if the illness, injury or disability is job related and compensable by Worker's Compensation, then and in such event, seniority shall be lost and the employment relationship shall end upon expiration of an absence of two (2) years; or

(f)     The employee is absent from work, including the failure to return to work upon the expiration of any leave of absence, vacation, or layoff, for three (3) consecutive working days without notifying the Employer and making mutually acceptable arrangements for the employee's return to work, except when the failure to notify and work is due to circumstances beyond the control of the employee.


ARTICLE 9. VACANCIES AND PROMOTIONS

Section 1. Vacancies and New Positions. (a) Whenever job vacancies occur or new positions are created within the bargaining unit, the Employer shall post the vacancy or new position on the main bulletin board and on the NOCH website for a period of not less than five (5) calendar days. The job posting shall at least specify the following:

(i)     The position to be filled;

(ii)     Information relative to the position (e.g. job description, minimum requirements, etc.); and

(iii)     The date of first posting.

(b)      Employees having the necessary qualifications and desiring to be considered for the vacancy or new position shall make written application to the Human Resources Office within the posting period.  Application from persons not possessing the minimum requirements need not be considered.  An employee must be employed for six (6) months before bidding on any vacancy, unless approved by the Employer.

(c)      The Employer may fill any vacancy or new position on a temporary basis during the time necessary to fill the job on a regular basis.  The time spent by an employee in temporarily filling a job vacancy or new position will  be considered in determining the employee's experience or seniority when filling the assignment on a regular basis.  Nothing in this section limits the Employer's discretion to choose a candidate to fill a position.

Section 2.  Placement and Promotions.  (a)  In the event of a job vacancy or new position, placement or promotion within the bargaining unit shall be based upon the Employer's assessment of the applicants' demonstrated ability, dependability, experience, training, education, mental and physical qualifications, and such other reasonable factors as the Employer deems important with respect to the job vacancy or new position to be filled.  If, based on the above factors, two or more applicants are equally qualified, the employee with the greatest Hospital-wide seniority shall be selected.

(b)      An employee who is selected shall be allowed to begin his/her new position within 60 days of being selected.

(c)      The Employer reserves the right to hire from outside the bargaining unit whenever there are no applicants within the bargaining unit with all of the desired training, experience, capability and qualifications, and/or when it is in the best interests of the Hospital.

Section 3.  Trial Period and Re-Bidding.  (a)  An employee who is transferred to or successfully bids upon a job vacancy or new position shall be subject to a ninety (90) calendar day trial period to determine his ability to successfully and satisfactorily perform the job.  At any time during the trial period, the Employer may send the employee back to his former job, without loss of seniority.

(b)      An employee who bids on and receives a job change as provided herein, shall not be eligible to bid on another job posting for a period of six (6) months following the job change, unless such re-bidding is approved by the Employer.


ARTICLE 10.  LEAVES OF ABSENCE

Section 1.  Jury Leave.  (a)  If an employee is summoned for jury duty at times which conflict with his scheduled work, and if the employee is not relieved from such duty, then the employee shall be granted a special paid leave of absence for that purpose, provided he presents evidence of such duty to the Employer as far in advance as possible.  In the discretion of the Employer, depending upon staffing requirements and the availability of substitute help, employees shall work their

scheduled hours when not serving as jurors, and an employee not selected to serve on a particular jury shall report to his scheduled work immediately after selection of said jury if so requested by the Employer.

(b)     It is the basic intent of this Section that an employee not receive materially more, or any less, compensation (as a result of fulfilling jury duty) than the employee would have received if such jury duty had not prevented the employee from working his/her regularly scheduled hours. Accordingly, the Employer shall pay the employee the entire pay he/she would have received for his/her regularly scheduled hours lost as a result of jury duty, and the employee shall endorse over to the Employer any payment he/she receives for jury duty (excluding mileage and parking). Paid jury leave shall be limited to eighty (80) hours per trial.

(c)     In the event an employee on the 11:00 p.m. to 7:00 a.m. shift is required to serve on jury duty, the Employer will make a reasonable attempt to adjust the employee's shift or work schedule in an effort to avoid the need for the employee to work the 11:00 p.m. to 7:00 a.m. shift immediately preceding his required jury duty.

Section 2.  Court/Witness Leave. (a) If, because of his employment by the Employer (e.g. blood alcohol test, etc.), an employee is subpoenaed as a witness in a judicial proceeding, the time the employee is required (pursuant to subpoena) to be in court or two (2) hours, whichever is greater, shall be counted as working time (for wage payment and overtime eligibility purposes). However, as a condition of eligibility for such court/witness pay, the employee must: (i) provide the Employer with a copy of the subpoena and of his court appearance schedule as far in advance as possible; (ii) provide the Employer with written verification of the time actually required to be spent in court; and (iii) work all regularly scheduled hours which do not conflict with his court appearance unless expressly excused from doing so.

(b)     The Employer shall pay the employee the entire pay to which he/she is entitled, and the employee shall endorse over to the Employer any witness fees payable to him/her.

Section 3.  Military Leave. Any employee who, while employed by the Employer, enters or has entered into active service in the United States Armed Forces, and who receives an honorable discharge and is still qualified to perform the duties of his former position and makes application for reinstatement within ninety (90) days after his discharge, shall have such reinstatement rights, consistent with his seniority, as are afforded by all applicable laws and federal regulations.

Section 4.  Bereavement Leave. (a) Regular full-time and regular part-time employees who have completed their probationary period may be granted up to a total of three (3) work days as bereavement leave in the event of death in the employee's immediate family, and up to one (1) work day in the event of death of the employee's brother-in-law or sister-in-law. The three-day leave must include the day of the funeral and the days must be consecutive. If the memorial service is a future date the employee may take two (2) consecutive days at the time of death and 3rd day off at time of memorial service. The employee will receive bereavement pay only for the days of work that were scheduled and missed. As used in this Section, the term "immediate family" is defined as including an employee's spouse, son, daughter, stepchild, parent, brother or sister, grandfather or grandmother,

grandchild, and the parent of a spouse.  (These relationships shall include "step" relationships - e.g. stepmother, stepson, etc.)

(b)     Paid bereavement leave shall not be granted on a paid holiday or during any leave of absence (whether medical or personal).  If a bereavement leave falls during an employee's scheduled paid time off, the employee will not be required to use paid time off but will be paid bereavement pay for days that would have been scheduled.

(c)     Employees who are not eligible for paid bereavement leave may be granted an unpaid leave in the event of death in the employee's immediate family.

Section 5.  Medical Leave, Personal Leave or Adoption Leave.  In addition to the Leave of Absence provisions of Section 1 through Section 4 of this Article (above), a medical leave, personal leave or adoption leave may be available, subject to and in accordance with the following terms and conditions:

(a)     Medical Leave.  In addition to the provisions of subsection (d) below, the following provisions shall apply to a medical leave of absence:

(i)      A medical leave shall be a leave of absence which, at the time it is applied for and granted, is to be used in connection with a known or projected period of temporary disability (i.e. medical or physical inability to perform the employee's job) on the part of the employee.  For example, a medical leave may be sought by an employee who is or will be temporarily unable to perform his job by reason of an existing disabling illness and/or injury, surgery, pregnancy and/or childbirth.

(ii)     When a medical leave of absence is granted, the employee shall be entitled to use his earned and accumulated paid time off for the actual days of disability occurring during the medical leave, as such actual disability days are verified by a doctor's certificate.

(iii)    In the Employer's sole discretion, a medical leave may be granted for a brief period of time immediately adjoining (i.e. either immediately before or immediately after) the period of temporary disability; provided, however, that if and to the extent a medical leave is granted for a period longer than the employee's actual period of disability, any and all medical leave days not documented as actual disability days shall be without pay.

(iv)    An unpaid medical leave may be granted to an employee who has not completed his probationary period if: (i) he has been employed at least one (1) month if full-time or two (2) months if part-time, and (ii) he has a physician's certification verifying the need for a non-elective surgical procedure and/or an extended illness requiring the physician's care.  If a probationary employee is granted a medical leave pursuant to this paragraph, the employee's probationary period shall be extended one (1) day for each day of leave.

(b)     Personal Leave.  In addition to the provisions of subsection (d) below, the following provisions shall apply to a personal leave of absence:

(i)     A personal leave shall be an unpaid leave of absence which, at the time it is applied for and granted, is to be used for personal reasons other than known or projected disability and other than seeking or engaging in different employment.

(c)     Adoption Leave.  In addition to the provisions of subsection (d) below, the following provisions shall apply to an adoption leave of absence:

(i)     An adoption leave shall be a leave of absence which, at the time it is applied for and granted, is to be used by an adopting mother or father in connection with her/his current (i.e. at the time of adoption) adoption of a child six (6) years of age or younger.

(ii)     When an adoption leave is granted, the employee shall be entitled to use earned and accumulated paid time off.  Once the employee exhausts paid time off, the remainder of the adoption leave will be unpaid.

(d)     Provisions Applying to Medical Leaves, Personal Leaves and Adoption Leaves. Unless otherwise limited or restricted in their application, the following provisions shall apply to medical leaves, personal leaves and adoption leaves:

(i)     Application by an employee for a medical leave, personal leave or adoption leave shall be made on forms provided by the Employer, shall state the type of leave requested and the reason for it, shall specify the proposed beginning and ending dates of the requested leave of absence, and shall be signed by the employee.

(ii)     Applications for medical leave, personal leave or adoption leave shall be made to the employee's Manager (who will forward the same to the Human Resources Office), and shall be subject to approval or disapproval in the discretion of the Employer.

(iii)     If a medical leave, personal leave or adoption leave is granted, it shall be granted in writing, shall specify the beginning and ending dates of the leave, and shall be signed by the employee's Manager or Assistant Manager and a Human Resources representative.

(iv)     The granting or denial of any medical leave, personal leave or adoption leave in any given case shall not constitute any practice or precedent whatsoever with respect to any other case.

(v)     No medical leave, personal leave or adoption leave shall be granted for any period longer than ninety (90) calendar days.  A personal leave may, in the discretion of the Employer, be renewed for an additional period or periods not exceeding ninety (90) calendar days each.  If an employee on medical leave had less than   five (5) years of continuous employment with the Employer upon commencement of such medical leave, the medical leave may, in the discretion of the Employer, be renewed for an additional period or periods not exceeding ninety (90) calendar days each.  If an employee on medical leave had five (5) or more years of continuous employment with the Employer upon commencement of such

14

medical leave, the medical leave shall, if it continues to be medically verified and required, be renewed for an additional period or periods not exceeding ninety (90) calendar days each and not exceeding an aggregate total of one (1) year.

(vi)     An employee shall not be eligible for a personal leave during his probationary period.

(vii)    If a medical leave, personal leave or adoption leave is granted for a period up to but not exceeding ninety (90) calendar days, the Employer will hold the employee's position open. If, however, any medical leave or personal leave (including any extension or renewal thereof) exceeds a total of ninety (90) calendar days, then and in such event, upon expiration of the leave the Employer will attempt to place the employee in the same type of work he was doing before the leave began, if such work is available.  If such work is not available, the employee will be offered the opportunity to fill the first vacancy occurring in his former classification, provided he has the experience, training and qualifications to perform the job.  However, if no such vacancy occurs within eighteen (18) months following expiration of the leave of absence, the employee will lose all seniority and reinstatement rights.

(viii)   An employee on a medical leave, personal leave or adoption leave may request that the leave be terminated and that he be returned to work prior to the specified expiration date of the leave; provided, however, that the Employer shall have discretion in determining whether or not to allow early termination of the leave.

(ix)    In the event of a conflict between the leave of absence provisions of this Article and the "loss of seniority" provisions of the Seniority Article, the loss of seniority provisions shall control.

Section 6.  Family and Medical Leave Act.  A leave of absence of up to twelve (12) weeks during any twelve (12) month period shall be granted to an eligible employee in accordance with the Family and Medical Leave Act ("FMLA") for the purposes permitted by the FMLA.  All FMLA leaves of absence shall be subject to and administered in accordance with the FMLA and its regulations, and in accordance with the Employer's written FMLA policy; provided, however, that in the event of conflict between the provisions of the FMLA and its regulations and the provisions of the Employer's policy, the provisions of the FMLA and its regulations shall control.


ARTICLE 11.  PAID TIME OFF

Section 1.  Paid Time Off.  Paid time off (PTO) is provided to encourage the planning of scheduled time off.  PTO provides employees compensation for time off when absent from work for such purposes as vacation, illness, personal holidays, family emergencies, and medical/dental care. PTO also provides employees the option to cash out hours and receive extra income.  Paid time off is accrued based on years of service.

15

(a)     Paid time off will be granted to all regular full-time and regular part-time employees. Paid time off will accrue at the following normal accrual rates:

| Years of Service | Maximum Accrual in Days/Hours Per Year | Accrual Rate Per Hour |
|---|---|---|
| Less than 5 | 19 Days/152 Hours | .07308 |
| 5 but less than 10 | 24 Days/192 Hours | .09231 |
| 10+ | 29 Days/232 Hours | .11154 |

A "year of service", for purposes of this Section 1(a), shall mean a twelve (12) month period during which an employee qualifies as either a regular full-time or regular part-time employee.

(b)     PTO will accrue on all hours worked (including overtime hours) at their straight time value, and stay home/send home and paid bereavement hours.  PTO does not accrue on any other hours not worked.

(c)     Paid time off will accrue on the first eligible two thousand eighty (2080) hours per anniversary year, up to the maximum listed in the table in paragraph (a) above per anniversary year.

(d)     Eligible employees may request the use of PTO after the successful completion of their probationary period.

(e)     <u>Scheduling Paid Time Off</u>.  Scheduling of PTO shall be as follows:

Employees must request PTO not more than 6 months in advance and at least three weeks in advance of the first day of the schedule containing the requested day(s) (except in the case of an unforeseen illness and/or emergency).  Managers may grant PTO requests with less than three weeks' notice depending upon departmental needs.  Requests for PTO must be submitted to the employee's manager in writing unless illness or emergencies preclude such advance written requests.

The Department Manager shall respond to PTO requests as soon as reasonably possible, but not later than the start date of the requested PTO or three (3) weeks after the written request is made (whichever occurs first).  Approval of PTO requests shall be determined on a first come first served basis unless the affected employee(s) and the manager agree otherwise.

Each department shall have in writing on the unit its guidelines (which shall not be inconsistent with the PTO provisions of this Agreement and which are subject to Human Resources' prior written approval) for handling/approving PTO requests.

Conflicts in PTO requests that have not yet been approved shall be resolved in favor of the employee having greater departmental seniority unless: (1) the affected employee(s) and the manager agree otherwise; or (2) the senior employee has had the same block of time off in one or both of the previous two years, in which case the next senior employee (who has not had the same block of time off in either of the previous two years) will be awarded the requested PTO.  If the only employees who request the same block of time have both/all had that block of time off during either of the previous two years, the requests shall be resolved in favor of the employee having the greatest departmental seniority.

  (f) <u>General Provisions</u>.  In responding to PTO requests, a manager shall consider and apply the following principles or provisions:

   &bull; Managers may limit the granting of PTO requests in order to maintain adequate staff, etc. - i.e. there shall be no guaranteed minimum or maximum number of PTO approvals on any shift or at any given time;

   &bull; Past PTO decisions (whether of approval or disapproval) shall not be controlling or precedent setting; and

   &bull; Employees may not request PTO in excess of their banked PTO at the time the request is made.

  (g) <u>Unscheduled Time Off</u>.

   (i) An employee who is absent from work due to personal illness or injury, may be required to substantiate such illness or injury as follows:

    (a) By providing a doctor's certificate verifying such illness or injury; provided, however, that if the employee was not attended to by a doctor, the Employer may require a written signed statement from the employee certifying the nature and duration of the illness or injury which necessitated the employee's absence; and/or

    (b) By submitting to an independent medical examination at the Employer's expense by a doctor or doctors mutually selected by the Employer and the employee; provided, however, that if the Employer and employee are unable to agree upon the doctor to be selected, the Employer may designate the doctor or doctors to be utilized.

    (c) Before returning to work following an absence of three (3) days or more due to illness or injury, whether such absence was paid or unpaid, an employee shall satisfy the Employer that he is fully fit and able to perform the duties and responsibilities of his employment.  In addition to any other requirement, the

Employer may require a statement by a qualified physician certifying that the employee is in mental and physical condition to return to his regular employment.

    (d)    Excessive unscheduled time off will be reviewed by the managers and corrective action taken if deemed necessary.

    (h)    Employees who work less than their regularly scheduled number of hours will be required to use PTO hours (to the extent accrued and available) for the hours not worked, unless stay homes and/or go homes apply (in which case PTO is optional).

    (i)    The manager may grant non-paid time off on a case by case basis. Managers are not required to approve non-paid time off. Managers may approve non-paid time off only when it is appropriate for staffing levels in their departments. An unpaid leave of absence will not be granted if an employee has PTO available for use. Past non-paid time off decisions (whether of approval or disapproval) shall not be controlling or precedent setting.

    (j)    Paid time off will be paid at the employee's base rate of pay and will not include shift differential or other pay premiums.

    (k)    Employees may not, at any given time, accumulate PTO accrual in excess of their maximum annual accrual. An employee having accrued the maximum allowable PTO accumulation will not accrue any further PTO until after he/she uses some of his/her accumulated PTO.

    (l)    When an employee changes status from full-time to regular part-time or vice versa, the employee's PTO accrual rate will stay the same; however, because PTO accrues based on hours worked, the employee's accrual will adjust as his/her hours worked adjusts.

    (m)    Paid time off may be used simultaneously when an employee is receiving short-term disability (STD) or long-term disability (LTD), to supplement the disability payments.

    (n)    Employees may, subject to the limitations and restrictions of this paragraph, elect (in a given calendar year) to sell a portion of any PTO accrual to be earned during the next succeeding calendar year (i.e. employees may not elect to sell any current PTO accrual). Such election (if any) must be made in writing (on a form available through the Human Resources Department) and must be filed with the Human Resources Department between November 1 and December 31 of the calendar year immediately preceding the calendar year in which the PTO will be earned and sold (i.e. cashed out). An employee's election to sell PTO is irrevocable after December 31st. An irrevocable election to sell future PTO accruals shall be subject to the following additional conditions: (i) the sale cannot occur until the future PTO accrual has been earned and the employee would otherwise have been eligible to take the PTO (e.g. completion of the probationary period, etc.); (ii) the sale cannot be for more than 50% of the employee's reasonably anticipated or projected PTO accrual for the entire calendar year; (iii) the sale cannot be for more than 40 hours during the period from January 1 through June 30 or for more than 40 hours during the period from July 1 through December 31; (iv) the sale may not occur if it would reduce the employee's remaining (i.e. after the sale) PTO accrual below 40 hours; and (v) the PTO sale will be at the employee's regular

straight-time hourly rate at the time the sale occurs. The employee may, consistent with the terms and conditions of this paragraph, designate the pay period during which the PTO sale should occur provided he/she does so in writing (to the Human Resources Department) at least ten days before the pay day at which the employee desires to receive payment. In the event the employee fails to properly designate the pay period during which the PTO sale should occur, payment shall be made at such time as the Employer may determine.

(o)     When a holiday occurs during an employee's scheduled paid time off, and the employee is eligible for holiday pay, payment for that holiday will be covered by holiday pay and not available PTO hours.

(p)     PTO is not counted as hours worked for purposes of overtime.

(q)     When a former staff member is rehired, he/she is considered a new employee and paid time off is earned in the same manner as it is for any new employee.

(r)     Employees who resign or retire with proper notice (2 weeks) will be paid 100% of their unused PTO. Employees who are terminated, or who resign or retire without two weeks' notice, will not be eligible for payment of the PTO balance.

Section 2. Conversion from Traditional Banks to PTO.

(a)     The total balance of each employee's vacation bank plus any vacation accrual up to July 1, 1998, will be placed in each employee's PTO bank.

(b)     All unused personal days will be placed in each employee's PTO bank.

(c)     Employees will be able to use their sick hours after the PTO plan is implemented until October 24, 1998. Employees' sick bank balances will be frozen after October 24, 1998. They will not be available for use for regular sick day absences. They will be available for use in the case of an approved short or long-term disability claim, in which case employees may supplement their disability payments with the frozen banks. If an employee uses PTO for an accident or illness that eventually turns into a short-term disability absence, the employee will be able to replace the PTO used for the absence with frozen sick time if the employee has a frozen sick bank.

(d)     10% of the unused frozen sick banks will be paid to employees, upon resignation or retirement with proper notice (two weeks), if ten (10) years of service have been achieved. Employees who are terminated, who resign or retire without two (2) weeks' notice, or who do not have ten (10) years of service, will not receive this benefit.

ARTICLE 12. PAID HOLIDAYS

Section 1. Paid Holidays. (a) Subject to and in accordance with the provisions of this Article, eligible employees shall be entitled to holiday pay for the following days:

19

New Year's Day
Memorial Day
Independence Day
Labor Day
Thanksgiving
Christmas

(b)  When one of the above designated holidays falls on a Sunday, it will instead be observed on the following Monday.

Section 2.  Eligibility for Holiday Pay.  (a)  To be eligible for holiday pay, an employee must comply with the following conditions:

(i)     The employee must be a regular full-time employee, or if not full-time must have a regular work schedule of at least seventy-two (72) hours per fourteen (14) day payroll period, on the day of the holiday;

(ii)     The employee must have worked his last scheduled work day immediately preceding and his first scheduled work day immediately following the holiday unless:  the employee's absence on his last scheduled day before or first scheduled day after the holiday is due to an absence approved by the employee's Manager or Assistant Manager; or the employee is hospitalized (admitted) on his last scheduled day before or first scheduled day after the holiday; or the employee is expressly authorized by his Manager, Assistant Manager or supervisor to leave early on his last scheduled day before or first scheduled day after the holiday for lack of work; and

(iii)     The employee must have worked the day of the holiday if scheduled to do so. (Except see Section 2(c) below).

(b)     If a holiday falls within an employee's authorized paid time off and the employee is otherwise eligible for holiday pay, the day of the holiday shall be paid as a holiday and shall not be charged as a paid time off day.

(c)     If a holiday falls on a day that an employee is scheduled to work but is unable to work due to an illness or injury for which the employee is eligible to receive paid time off, the day will be charged and paid as holiday time instead of being charged against the employee's paid time off accumulation.

(d)     If a holiday falls during any other (i.e. other than as provided in Section 2(b) or 2(c) above) absence by an employee (whether excused or unexcused and whether paid or unpaid), the employee will not receive holiday pay.

Section 3.  Holiday Pay.  Employees who are eligible for holiday pay shall receive holiday pay as follows:

(a)     Holiday pay shall be equal to an employee's regular straight-time hourly rate times the number of hours in the employee's regular work shift, but not exceeding eight (8) hours; provided, however, that an employee who is both classified as a ten (10) or twelve (12) hour shift employee and who regularly works ten (10) or twelve (12) hour shifts shall receive ten (10) or twelve (12) hours (whichever is applicable) of holiday pay if the employee is otherwise eligible for holiday pay.

(b)     If the holiday falls on an employee's scheduled day off, the employee shall receive holiday pay for the day.

(c)     If the holiday falls on a day an employee is scheduled to work and does work, the employee shall receive holiday pay plus pay for the hours actually worked on the holiday.

(d)     Holiday pay shall not be considered or counted as hours worked for purposes of determining an employee's eligibility for overtime pay.

(e)     Except for Christmas and New Year's Day, the paid holidays recognized by this Agreement shall begin at 11:00 p.m. on the day preceding the holiday and shall end at 11:00 p.m. on the holiday.

(f)     For Christmas and New Year's Day, the holiday shall begin at 3:00 p.m. on the day preceding the holiday and shall end at 11:00 p.m. on the holiday.

Section 4. Alternate Day Off:  A full-time employee who is required to work on a holiday (specified in this Agreement) may elect to take an alternate day off, without pay.  In such cases, the alternate day off must be taken within thirty (30) calendar days after the holiday; provided, however, that if the Christmas holiday is worked an alternate day off may be taken after December 26th and before May 26th next following the holiday, and if the New Year's holiday is worked an alternate day off may be taken after January 2nd and before March 15th next following the holiday.  All alternate days off, if elected, shall be taken at times mutually agreeable to the employee and the Employer.

Section 5. Regular Part-Time Employees:  (a) Regular part-time employees who work all of their scheduled or assigned hours on a holiday (based on the days and hours prescribed above with respect to full-time employees) shall be eligible for holiday pay for the holiday hours they actually work; provided, however, they shall not receive more than eight (8) hours of holiday pay unless they are both classified as a twelve (12) hour shift employee and work a twelve (12) hour shift on the holiday (in which event they will receive 12 hours of holiday pay).  Such holiday pay shall be at the employee's straight-time hourly rate, and shall be in addition to the employee's regular pay, but shall not be considered or counted toward overtime eligibility.

(b)     If a regular part-time employee is prevented from working his/her normal schedule because the employee's department is closed on a holiday, then and in such event the regular part-time employee shall either: (i) be afforded an alternate work day, or (ii) receive "stay home" PTO credit for his/her normally scheduled hours lost.

21

ARTICLE 13.  <u>INSURANCE</u>

<u>Section</u> 1.  <u>Hospital - Medical Program</u>.

(a)     <u>Eligibility</u>:

(i) Regular full-time employees and regular part-time employees working forty (40) hours or more per pay period on a regularly scheduled basis, shall be eligible, after ninety (90) calendar days of continuous employment within the bargaining unit, to participate in a group hospital-medical program provided through the Employer.  Such employees may obtain the necessary applications from the Human Resources Office.

(ii)        Regular part-time employees who have completed ninety (90) calendar days of continuous employment within the bargaining unit and who thereafter transfer from ineligible status (i.e. working less than 40 hours per pay period on a regularly scheduled basis) to eligible status (i.e. working 40 or more hours per pay period on a regularly scheduled basis) will be eligible to participate in a group hospital-medical program (if elected) effective on the 28th day (or other premium due date) of the calendar month following the calendar month in which the employee transferred into eligible status.

(b)     <u>Programs, Coverage, and Terms</u>:  The group hospital-medical program(s) provided through the Employer shall include both basic hospital services and major medical coverage.  Such group hospital-medical program(s) may consist of one or more commercial insurance plans, partially self-funded plans, health maintenance organization ("HMO") plans, or other comparable programs (e.g. preferred provider organizations ["PPOs"] and other structured arrangements for the provision of medical care).  For purposes of convenience, with respect to the various provisions of this Article 13 (Insurance), such group hospital-medical programs may be referred to as "group insurance"; the company, organization or other entity providing such group insurance may be referred to as an "insurance carrier(s)"; the plan or program governing such group insurance may be referred to as the "insurance policy or policies"; and the cost of such group insurance may be referred to as the "insurance premium(s)."

(c)     <u>Foreign Claims</u>:  When applicable (e.g. with respect to partially self-funded plans, etc.), "foreign claims" (defined as including both in- and out-patient health services provided at a health care facility other than North Ottawa Community Hospital) shall be subject to a deductible of Two Hundred Dollars ($200.00) per occurrence.  The deductible will be waived if the foreign claim is for services which are unavailable at North Ottawa Community Hospital, and/or if the claim is for emergency room treatment for accidental injury or illness constituting a life threatening medical emergency.  Differences in methods of providing a health service will not be construed as a service being unavailable at North Ottawa Community Hospital.

(d)     <u>Payment</u>: Payment of the cost of the group hospital-medical programs shall be made in accordance with, and subject to, the following terms and conditions:

(i)     <u>Solely for purposes of these hospital-medical program payment provisions</u>, the following terms shall have the following meanings:

(A)    "Full-Time Employees" shall mean eligible employees working seventy-two (72) or more hours per pay period on a regularly scheduled basis;

(B)    "Part-Time Employees" shall mean eligible employees working forty (40) or more, but less than seventy-two (72), hours per pay period on a regularly scheduled basis;

(ii)    The Employer will pay:

(A)    For Full-Time Employees - an amount equal to eighty percent (80%) of the cost of the <u>lowest</u> priced plan (i.e. 80% of the cost of the base HMO plan or 80% of the cost of the base POS plan provided through the Employer); and

(B)    For Part-Time Employees - an amount equal to fifty percent (50%) of the cost of the <u>lowest</u> priced plan (i.e. 50% of the cost of the base HMO plan or 50% of the cost of the base POS plan provided through the Employer).

Beginning July 1, 2017 the Employer will pay:

(A)    For Full-Time Employees - an amount equal to seventy-five percent (75%) the cost of the <u>lowest</u> priced plan (i.e. 75% of the cost of the base HMO plan or 75% of the cost of the base POS plan provided through the Employer); and

(B)    For Part-Time Employees - an amount equal to forty-five percent (45%) of the cost of the <u>lowest</u> priced plan (i.e. 45% of the cost of the base HMO plan or 45% of the cost of the base POS plan provided through the Employer).

(iii)    Any and all group hospital-medical program costs in excess of the Employer's contributions (as hereinabove prescribed) shall be paid by the eligible and participating employees, by payroll deduction or otherwise. (For example, if an employee chooses an HMO plan, a POS plan, or another plan offered by the Employer at a premium cost in excess of the base plan rates, all costs in excess of the base plan rates will be paid by the employee.)

(iv)    For emergency room care received by an insured employee (or a covered dependent) at NOCH, the maximum copay amount the employee will be responsible for will be Forty-Five Dollars ($45.00) of the emergency room charge; provided, however, that such waiver shall only be available after the employee provides the Employer with proof that the insurance provider has paid emergency room charges in excess of the co-pay or deductible.

Section 2.  Dental Insurance.

(a) Eligibility: Regular full-time employees and regular part-time employees working forty (40) hours or more per pay period on a regularly scheduled basis, shall be eligible, after ninety (90) days of continuous employment within the bargaining unit, to participate in a group dental insurance program provided through the Employer.  Such employees may obtain the necessary applications from the Human Resources Office.

(i)     Regular part-time employees who have completed ninety (90) calendar days of continuous employment within the bargaining unit and who thereafter transfer from ineligible status (i.e. working less than 40 hours per pay period on a regularly scheduled basis) to eligible status (i.e. working 40 or more hours per pay period on a regularly scheduled basis) will be eligible for group dental insurance coverage (if elected) effective on the premium due date of the calendar month following the calendar month in which the employee transferred into eligible status.

(b)     Coverage:  The group dental insurance provided through the Employer shall be a plan or program of the Employer's choosing.

(c)     Payment:  The cost of the group dental insurance program shall be paid as follows:

(i) For eligible employees working  seventy-two (72) or more hours per pay period on a regularly scheduled basis, the Employer shall pay one hundred percent (100%) of the applicable monthly insurance premiums for employee-only coverage.

(ii)     For eligible employees working forty (40) or more hours per pay period on a regularly scheduled basis, the Employer shall pay fifty percent (50%) of the applicable monthly insurance premiums for employee-only coverage.  (The remaining fifty percent [50%] of said premiums shall be paid by the employee).

(iii)     Eligible employees who elect to include their eligible dependents under the group dental insurance program shall pay one hundred percent (100%) of the applicable monthly insurance premiums for such dependent coverage.

(iv)     Any and all premium costs in excess of the Employer's contributions, as set forth above, shall be paid by the employee, by payroll deduction or otherwise.

Section 3.  Life Insurance.

(a)     Eligibility:  Regular full-time employees and regular part-time employees (working forty [40] hours or more per pay period on a regularly scheduled basis) shall be eligible, after ninety (90) days of employment, to participate in a group term life insurance program provided through the Employer.  Such employees may obtain the necessary applications from the Human Resources Office.  Those employees who are working less than forty (40) hours per pay period, but have life insurance coverage on June 30, 1998, will be grandfathered in to the life insurance plan.

24

(b)    <u>Coverage</u>:  The group term life insurance for eligible employees shall be in the amount of one (1) times the employee's base annual compensation, up to but not exceeding $50,000 of coverage for full-time employees and up to but not exceeding $25,000 of coverage for part-time employees.

(c)    <u>Payment</u>:  The cost of the group term life insurance program shall be fully paid by the Employer.

Section 4.  <u>Short-Term Disability Insurance</u>.  (a) Eligibility:  All regular full-time or regular part- time employees (working forty [40] or more hours per pay period on a regularly scheduled basis) shall be eligible, after 90 days of continuous employment in the bargaining unit, to participate in group short-term disability insurance program provided through the Employer, at the Employer's cost.  Such employees may obtain the necessary applications from the Human Resources Office.  Short-term disability will be effective on August 1, 1998.

Section 5.  <u>Long-Term Disability Insurance</u>.

(a)    <u>Eligibility</u>:  Regular full-time and regular part-time employees (working forty [40] or more hours per pay period on a regularly scheduled basis) shall be eligible, after ninety (90) days of continuous employment in the bargaining unit, to participate in a long-term disability insurance program provided through the Employer, at the Employer's cost.  Such employees may obtain the necessary applications from the Human Resources Office.  Long-term disability coverage will be available effective August 1, 2007.

(b)    <u>Coverage</u>:  The long-term disability insurance program will provide a 60% benefit level and a 90 day elimination period.

Section 6.  <u>Insurance Carriers</u>.  The Employer shall have the right, with respect to any and all group insurance programs, to select and/or change insurance carriers provided that the coverage is basically comparable to or better than such existing coverage.  Before changing insurance carriers, however, the Employer and a representative of the proposed insurance carrier will discuss the proposed change with Association representatives.

Section 7.  <u>Benefits in Accordance With Policies</u>.  Any and all group insurance benefits provided pursuant to this Agreement shall be subject to the terms, provisions and conditions of the applicable insurance policy or policies; and if any such group insurance benefits or provisions of this Agreement are contrary to or inconsistent with the terms, provisions and/or conditions of the applicable insurance policy or policies, the insurance policy or policies shall control.

Section 8.  <u>Continuation/Termination of Insurance Coverage</u>.

(a)  The Employer's contributions toward the cost of any group insurance benefits provided pursuant to this Agreement shall be continued, for eligible employees, only during the first fifteen (15) calendar days of any approved leave of absence (paid or unpaid), of any layoff, or following

death of an employee (if dependents are included on his group hospital-medical program), except as specifically provided herein below.

(b)     In the case of an employee who is on an approved medical leave of absence during which he is eligible for and receiving paid time off and/or short-term disability insurance payments pursuant to this Agreement, the Employer's contributions toward the cost of such group insurance benefits shall be continued for eligible employees, so long as the employee continues to receive paid time off and/or short-term disability insurance payments, but shall not be continued thereafter. (If an employee on an approved medical leave is eligible for and receives paid time off and/or short-term disability insurance payments during less than a full calendar month, the Employer's contributions toward the cost of such group insurance benefits for said month shall be pro-rated based on the period of paid leave.  All remaining costs, if such group insurance benefits are continued by the employee beyond the period of paid leave, shall be paid by the employee in advance).

(c)     In the case of a leave of absence resulting from a work-related injury or disability compensable by Worker's Compensation, the Employer's contributions toward the cost of such group insurance benefits shall be continued, for eligible employees, for a period up to but not exceeding one (1) year so long as the employee pays to the Employer his full share of the insurance premiums in advance of the premium payment dates.

(d)     The Employer's contributions toward the cost of any and all such group insurance benefits provided pursuant to this Agreement shall be discontinued immediately upon termination of the employee's employment (except as provided in Section 7(a) above in the event of death).

(e)     If an employee wishes to continue coverage for any period with respect to which the Employer's obligation does not exist or apply, the employee shall have the sole responsibility for making all arrangements and payment necessary for the continuance of such coverage at his own expense.

(f)     Eligible employees and/or their eligible dependents shall have such rights to extended group health insurance coverage, at their own expense, as are prescribed by the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA - Pub. Law 99-272), as amended; and any such extended coverage shall be subject to and governed by the provisions of the COBRA.

ARTICLE 14.  PENSION/RETIREMENT PLAN

Section 1. (a) The Employer's defined benefit pension plan, known as The North Ottawa Community Hospital Employee's Retirement Income Plan (the "DBP"), effective July 1, 1969, will be frozen in accordance with its terms with respect to any participating employees who are "grandfathered" under said DBP.  Further active participation in the DBP by any remaining "grandfathered" employees will be completely frozen effective October 24, 2018, subject to any participant notice requirements that apply.  No further accrual of benefits under the DBP will occur for any employee.

(b)     The group of "grandfathered" employees affected by this freeze will now be able to fully participate in the Employer's defined contribution plan (the "401(k) Plan"), information about which is contained in Appendix C (attached).  Appendix C is a general

summary only, and does not supersede the Summary Plan Description, or actual Plan language.

Section 2. (a) It is understood and agreed that the DBP and the 401(k) Plan, as they relate to members of the bargaining unit represented by the Association, will not be materially altered or terminated, except as may be required by law or regulation, without collective bargaining with and/or consent by the Association.

(b) It is further understood and agreed, however, that neither the terms and provisions of the DBP or the terms and provisions of the 401(k) Plan, nor the administration or application of either such plan, shall be subject to the Grievance Procedure (including without limitation the grievance arbitration provisions) of this Agreement.

## ARTICLE 15. CONTINUING EDUCATION

Section 1. In-Service Education. The Employer may present, or arrange to have presented, education programs dealing with nursing procedures and/or various other aspects of providing health care services, new items of medical, surgical or other health-care related equipment, and/or subjects pertaining to some or all of the Employer's personnel. When employees are required by the Employer to attend such in-service programs, they will be paid for such attendance. If required in-service program attendance results in an employee working more than eight (8) hours per day or eighty (80) hours per pay period, then and in such event the hours in excess of eight (8) hours per day or eighty (80) hours per pay period shall be paid at the rate of time and one-half (1-1/2) the employee's regular rate of pay. Otherwise, required in-service program attendance time shall be paid at the employee's regular straight-time rate of pay.

Section 2. Employer-Required or Employee-Requested Education. (a) Employer-Required Education: If the Employer requires an employee to attend a workshop, conference, institute, seminar, or some similar program, the employee will be paid at his regular straight-time rate of pay for the time spent in attendance at the program; provided, however, that if the program occurs during an employee's scheduled working hours and/or if it occurs more than one hundred (100) miles from the Hospital, the employee shall receive neither less nor more than eight (8) hours of pay at his regular straight-time rate of pay. The Employer shall also:

(i) either provide any necessary transportation or otherwise reimburse the employee for mileage expenses, when using his own vehicle, at the prevailing rate established by the Employer; and

(ii) reimburse the employee for any reasonable and necessary lodging and meal expenses incurred in connection with such attendance.

(iii) for any special certifications (e.g. ACLS, BLS, PALS, etc.) required by the Employer after commencement of employment, the Employer shall pre-pay (on behalf of the employee) the special certification course fees; provided, however, that if the employee fails to attend and/or successfully complete the special certification course, then and in such event

27

the employee shall reimburse the Hospital for any pre-paid course fees which are not refunded to the Hospital. Such reimbursement shall be by payroll deduction.

If a particular education program is to be treated as being "Employer Required," it shall be so designated in writing by the Employer.

If the educational program occurs within one hundred (100) miles of the Hospital and if the educational program together with required travel does not conflict with the employee's entire scheduled hours, the employee may, in the Employer's discretion, be required to work the balance of his or her shift.

(b) Employee-Requested Education: An employee who desires, but is not required by the Employer, to attend a workshop, conference, institute, seminar, or similar educational program related to his employment may request permission to do so (and must request permission to do so if such attendance would conflict with his scheduled working hours). The employee may also request reimbursement by the Employer for all or some of the reasonable and necessary travel, registration fee, and/or meal and lodging expenses incurred in connection with such attendance. In addition, if the attendance would interfere with the employee's scheduled working hours, the employee may also request continuation of his regular rate of pay for his regularly scheduled hours lost as a result of this participation in the educational program.

It is understood and agreed that, with respect to employee requested educational programs, the Employer shall have sole discretion in determining whether or not to allow wage continuation and/or expense reimbursement, in whole or in part, on a case by case basis. It is further understood and agreed that determinations made by the Employer with respect to any particular request shall not constitute any practice or precedent with respect to any other request.

(c) Procedure: As a condition of eligibility for receiving approval for participation in an educational program, and for receiving reimbursement for such participation (whether Employer required or employee requested) as provided herein, an employee shall comply with the Educational Program participation procedures prescribed, in writing, by the Employer.

Section 3. Computer On-Line Training. Notwithstanding any other provisions of this Article to the contrary, the Employer's payment for Employer-Required computer on-line training, if done outside the employee's scheduled work hours with the Manager's prior approval, will be at the rate of one (1) hour for each "contact hour." Such payment will be at the employee's regular straight-time hourly rate unless the time qualifies for overtime pay.

Employee-Requested computer on-line training shall be subject to training cost reimbursement (if any) and training time payment (if any) in the sole discretion of the Employer in accordance with its established request and approval procedures. If any such training time is approved, payment will not exceed that available for Employer-Required computer on-line training.

Section 4. Educational Reimbursement: The Employer shall provide educational reimbursement according to the following table:

28

| Regularly Scheduled Hours: | Benefit: |
|---|---|
| 80 to 64 | $1,800 per fiscal year |
| 63 to 48 | $1,500 per fiscal year |
| 47 to 32 | $1,050 per fiscal year |

Educational reimbursement shall be used to offset documented expenses for tuition, books and registration fees incurred by bargaining unit employees having successfully completed Employer-approved, job-related educational courses through accredited institutions. Employees are able to use educational reimbursement to pay for CEU credits. This benefit pays for the tuition costs of CEUs, and employee will not be reimbursed for travel, lodging and any other costs related to obtaining CEUs.

The Human Resources Department shall administer the educational reimbursement program. One (1) bargaining unit employee (appointed by the Association President) and the Human Resources Director will be the committee that will review questionable reimbursement requests. The Committee's denial, in whole or in part, of any request for educational reimbursement shall not be grievable.

Section 5. EMTs are required to begin working to obtain a Paramedic certification upon being hired, and will have immediate access to the educational reimbursement benefit. The EMT must enroll in the first available Paramedic certification class. The EMT, in exchange for the use of this benefit, must sign an agreement stating that they will not voluntarily leave NOCH's employment for one year following the receipt of the Paramedic certification. If the employee voluntarily leaves NOCH's employment before the end of one year, the employee must then re-pay all costs of obtaining the certification that were paid for, or reimbursed by, the hospital.


ARTICLE 16. LAYOFF AND RECALL

Section 1. Layoff. Layoff shall mean the separation of an employee from the active work force due to a reduction in the work force by the Employer for any reason determined by the Employer. When the size of the work force is to be reduced through a layoff of employees by the Employer, the following procedure will be utilized:

(a)     The Employer shall determine the departments and classifications to be affected, including the number of positions in each department and classification to be eliminated or reduced. Thereafter, the Employer shall notify the Association of the same, in writing, three (3) days before the layoff is implemented.

(b)     As used in this layoff procedure, the term "department" shall mean and include the various nursing departments enumerated in Article 2, Section 1(a), of this Agreement; the various technical departments enumerated in Article 2, Section 1(b), of this Agreement; and the various service departments enumerated in Article 2, Section 1(c), of this Agreement.

(c)    Upon determination of the departments and classifications to be affected, and the number of positions within each such classification and department to be eliminated or reduced, the Employer shall implement such layoffs as follows:

(i)    Temporary and probationary employees in the department and classification affected shall be laid off first, provided that the remaining employees in the classification and department have the necessary training, experience and qualifications, as determined by the Employer, to perform the required work.

(ii)    Additional layoffs within the department and classification affected shall be administered in the inverse order of the employees' classification seniority (i.e. employees with the least classification seniority in the department and classification affected shall be laid off first), provided that all remaining employees in the classification and department have the necessary training, experience and qualifications, as determined by the Employer, to perform the required work.

(d)    It is understood and agreed that, in connection with a layoff as provided above, the employees remaining in the classification and department where layoff is made shall be subject to such transfers or reassignments between shifts as may be deemed necessary by the Employer to maintain appropriate staffing levels for the classification on each shift.  Such shift transfers or re-assignments shall be made among the remaining employees having the least classification seniority within the classification and department affected by the layoff.  If any such remaining employee refuses such shift transfer or reassignment, that employee shall be laid off and the most senior laid off employee in the classification and department affected by the layoff may be recalled.  Employees whose shifts are changed as herein provided in connection with a layoff shall be returned to their former shift, in the order of their classification seniority, at such times as vacancies occur or positions are reinstated on the former shift.

Section 2.  Bumping Upon Layoff.  Bumping of one employee by another employee, in connection with layoffs pursuant to this Article, shall only be permitted subject to and in accordance with the following terms and conditions:

(a)    Bumping shall only be permitted upon a layoff pursuant to Section 2 above and not in connection with any reduction in hours pursuant to Section 1 above.

(b)    Bumping (if any) shall only be permitted under the following circumstances:

(i)    An employee may bump into:

• His/her current classification in a different department, based on classification seniority; or

• A previously held classification in his/her current department, based on departmental seniority; or

30

•    A previously held classification in a different department, based on hospital-wide seniority; or

(ii)    If an employee is serving a trial period following a promotion or transfer between classifications, and if the employee is laid off in the new classification, the employee may (consistent with his classification seniority in his immediately preceding classification and department) bump back into his immediately preceding classification.

(c)    An employee who desires to exercise bumping rights, as set forth in subsection (b)(i) or (ii) above, must: (i) have all the necessary training, experience and qualifications, as determined by the Employer, to perform the required work in the new position; and (ii) have satisfactorily performed in the previous classification into which the employee seeks to bump.  The Employer shall have sole discretion in determining whether or not to allow bumping if any additional orientation and/or instruction would be required in connection with the bumping.  (It is understood that this provision shall not preclude the Employer from permitting bumping where only minimal re-orientation would be required, especially with regard to an employee having a long term of service.)

(d)    An employee having and exercising bumping privileges shall bump the employee having the least seniority in the applicable category (i.e. of the type described in Section 2(b) above) in the new position into which he/she bumps.

(e)    Persons having and exercising bumping privileges pursuant to this Section shall continue to accrue seniority in their regular department and classification (i.e. in their primary cost center for payroll purposes), and not in the department into which they have bumped, unless such transfer becomes permanent.  When and if the transfer becomes permanent, the employee shall be credited with seniority in the new classification and department retroactive to the date of bumping. (At such time the employee's accrued seniority in his former classification and department shall be reduced by the same amount.)

(f)    An employee who is eligible to exercise bumping privileges in accordance with the provisions of this Section may exercise such privileges, if at all, only if he does so within twenty-four (24) hours of being notified of a layoff.

(g)    An employee who is permitted (pursuant to Section 2(b) above) to bump into a different classification shall be placed on the wage schedule in the new classification in accordance with the provisions of Article 23, Section 7 (pertaining to transfers and promotions).

Section 3. Recall. (a) Employees who are laid off from a classification and department, as provided in Section 2 above, shall have recall rights (in the inverse order of their layoff) as vacancies occur or positions are reinstated in the classification and department from which they were laid off, provided such employees still have the necessary training, experience and qualifications, as determined by the Employer, to perform the required work.  Employees having exercised bumping privileges, as provided in Section 3 above, shall similarly be eligible for recall to their former department (consistent with their classification seniority and the order of their layoff) at such time as vacancies occur or positions are reinstated in their former department and classifications, provided

such employees still have the necessary experience, training and qualifications, as determined by the Employer, to perform the required work.

(b)     Notices of recall shall be sent by registered or certified mail to the recalled employee's last known address, according to the records of the Employer, and shall allow a minimum of seven (7) calendar days between the date of mailing and the date scheduled for the employee's return to work.  A recalled employee who does not report for work on the designated return date, or who has indicated that he no longer desires to be employed by the Employer, shall lose all further recall rights.

Section 4.  New Hires During Layoff.  The Employer will not hire new employees to classifications and departments from which employees have been laid off, if there remain laid off employees who are eligible and qualified for recall to the classification and department, without first offering the job to the eligible and qualified.laid off employee(s).


ARTICLE 17.  WORKING HOURS AND SCHEDULES

Section 1.  Work Day.  (a)  The normal work day for regular full-time employees shall be eight (8) to twelve (12) hours, excluding non-paid lunch periods.

(b)     For purposes of this Section, the term "work day" shall mean a twenty-four (24) hour period from 11:00 p.m. to 11:00 p.m. daily.

(c)     If an employee reports for and actually works part of a scheduled shift of eight (8) or more hours, but is not needed for the balance of said shift, the employee may be sent home and receive pay for his/her actual hours worked or four (4) hours, whichever is greater; provided, however, that the Manager shall make a reasonable effort to fairly distribute such involuntary send homes, within the classification and department affected, over a reasonable period of time.

Section 2.  Work Period.  (a)  The normal work period for regular full-time employees shall be eighty (80) hours per fourteen (14) day payroll period, excluding non-paid lunch periods.

(b)     For purposes of this Section, the term "work period" shall mean a fourteen (14) day payroll period from 11:00 p.m. to 11:00 p.m. every other Saturday.

(c)     This Section shall not be construed as, and is not, a guarantee of any minimum or maximum number of hours or amount of pay per work period.

Section 3.  Work Schedules.  (a)  Work schedules shall be as determined by the Employer. Tentative work schedules shall be prepared and posted by the Employer fourteen (14) calendar days in advance of the first work day of the schedule.

(b)     Schedules shall be subject to change as the Employer's needs may require, and the Employer reserves the right to make changes in work schedules.  The Employer shall make a

reasonable effort to notify employees affected by schedule changes occurring after the schedule is posted.

If an employee is not needed for a scheduled shift, he/she shall be so notified at least two (2) hours before the start of the shift. An employee shall be deemed to have been so notified if advised in person or if called at any last known number (e.g. landline, cell phone, etc.), whether or not the call was answered or the employee was spoken with. In the absence of such notification, the employee shall be eligible for such "show-up" pay as is provided for in Article 18, Section 9.

(c)    Employees shall not trade work schedules (either in the form of days or shifts) without the express prior permission of the Manager, Assistant Manager or supervisor in charge of scheduling. Such trading of work schedules shall generally be avoided if it would result in any overtime liability on the part of the Employer.

(d)    When temporary openings (e.g. due to PTO, illness, etc.) occur in a work schedule before it is posted, part-time employees (if any) who are in the same classification and who are fully qualified (in the Manager's judgment) and who have recorded an interest in picking up extra hours shall be offered an opportunity to fill the temporary opening(s) before it is filled and posted with per diem or casual employees. Part-time employees wishing to be considered for such temporary openings shall record their interest and availability on such list or lists as the Department Manager may make available from time to time for this purpose. Such employees need not, however, be considered or assigned to temporary openings if the assignment would result in overtime pay. When temporary openings occur in a work schedule after it has been posted, the Employer may fill such openings in such manner as it may determine.

Section 4. Late Arrival. All employees are to be at their work station at the beginning of their shift. Any employee who punches in after his scheduled starting time will be considered tardy and penalized accordingly. Employees will be penalized for tardiness on the basis of one-tenth (1/10th) hour intervals. Thus, employees who punch in from one (1) to six (6) minutes late will be penalized one-tenth (1/10th) hour, from seven (7) to twelve (12) minutes late will be penalized two-tenths (2/10ths) hour, etc.

The Hospital will determine when circumstances warrant an exception to Late Arrival. If the Hospital makes such determination it will:  a) as soon as practicable notify management and employees using employee Hospital email addresses or a posting of its determination; and b) not charge employees with Late Arrival attendance points.

Section 5. Early Departure. All employees are to be at their work station until the end of their shift. Any employee who punches out before the end of his shift will be penalized on the basis of one-tenth (1/10th) hour intervals. Thus, employees who punch out from one (1) to six (6) minutes early will be penalized one-tenth (1/10th) hour, from seven (7) to twelve (12) minutes early will be penalized two-tenths (2/10ths) hour, etc.

Section 6. Penalty. In addition to being docked for time missed, employees who report for work late, or leave work early, or demonstrate absenteeism may be subject to discipline.

Section 7. Time Record. Any employee who seeks to create, modify, or otherwise tamper with another employee's time record may be subject to discipline.

Section 8. Notification of Absence. (a) If an employee is unable to report for and perform his scheduled work, the employee shall so notify his immediate supervisor or the House Supervisor, as the case may be, as far in advance of the beginning of his scheduled shift as possible. In no event, however, shall such notice occur less than two (2) hours before commencement of a day shift (commencing at or after 7:00 a.m.), or less than three (3) hours before commencement of an afternoon/evening or night shift.

(b)     Sick employees will not be required to call in daily if they have informed their Manager or Assistant Manager of the anticipated length of their illness. In such cases, the employee is required to give twenty-four (24) hours' notice of their intention to return to work so as not to interrupt work schedules.

(c)     Failure of an employee to comply with the notice provisions of this Section shall result in disciplinary action as may be appropriate.

Section 9. Lunch Periods. (a) Employees working for four (4) or more consecutive hours per work day shall be entitled to a thirty (30) minute non-paid lunch period, except that employees on creative/flexible schedules shall only receive one (1) lunch break per shift.

(b)     All lunch periods shall occur at such times as the Employer's Managers or Assistant Managers may determine consistent with the needs of the department. When reasonably possible and appropriate, however, an effort will be made to allow such lunch periods at times when the cafeteria is open.

Section 10. Rest Periods. Employees shall generally be entitled to one (1) fifteen (15) minute rest period per four (4) consecutive hours worked. Rest periods shall be scheduled by the appropriate Manager, Assistant Manager or supervisor in charge of scheduling consistent with the needs of the department. Rest periods are subject to delay in order to assure continuous and desired coverage. Rest periods not taken will not result in extra pay, and employees must recognize that there may be occasions when conditions do not permit rest periods.

Section 11. Emergency Work. An emergency work request by the Employer will obligate employees present who are qualified to do the required work to continue working beyond their regular shift until qualified replacements can be secured. Disciplinary action may be taken against any employee who fails to work under such circumstances.

Section 12. Sharing Weekends, Etc. It is understood and agreed that full-time and regular part-time employees covered by this Agreement shall share weekends, holidays and shift assignments as directed by the employee's department schedule.

Section 13. Creative/Flexible Schedules. The Employer may develop and implement creative or flexible work schedules (e.g. work schedules other than the normal eight hour shifts,

34

etc.); provided, however, that such schedules shall be discussed with the Association and shall be posted for at least seven (7) calendar days before being implemented on a regular basis.

## ARTICLE 18. OVERTIME AND PREMIUM PAY

Section 1. Daily Overtime. Time and one-half (1-1/2) an employee's regular rate of pay shall be paid for all hours worked in excess of eight (8) hours per work day, provided such overtime is approved in advance by the employee's Manager or Assistant Manager or, in the Manager's or Assistant Manager's absence, by the House Supervisor.

Section 2. Pay Period Overtime. Time and one-half (1-1/2) an employee's regular rate of pay shall be paid for all hours worked in excess of eighty (80) hours per fourteen (14) day payroll period, provided such overtime is approved in advance by the employee's Manager or Assistant Manager or, in the Manager's or Assistant Manager's absence, by the House Supervisor.

Section 3. Creative/Flexible Schedule Overtime. Employees assigned to creative or flexible schedules, pursuant to Article 17, Section 13, shall not be subject to the overtime provisions of Section 1 or Section 2 of this Article, but shall instead be subject to the following overtime provisions:

    (a)    Time and one-half (1-1/2) the employee's regular rate of pay shall be paid for all hours worked per work day in excess of the employee's regularly scheduled shift of eight (8) hours or more per work day, provided such overtime is approved in advance by the employee's Manager or Assistant Manager or, in the Manager's or Assistant Manager's absence, by the House Supervisor. (The following examples are illustrative: (i) If the employee is regularly scheduled for an 8 hour shift on a given work day, but works 9 hours on the work day instead, the 9th hour shall be paid at time and one-half. (ii) If the employee is regularly scheduled for a 12 hour shift on a given work day, but works 13 hours on the work day instead, the 13th hour shall be paid at time and one-half. (iii) If, however, the employee works a regularly scheduled shift of 12 hours, 3 of which fall on one work day and 9 of which fall on another work day, the employee shall not be eligible for daily overtime).

    (b)    Time and one-half (1-1/2) the employee's regular rate of pay shall be paid for all hours worked in excess of forty (40) hours per work week (i.e. first or second half of a given two week pay period), provided such overtime is approved in advance by the employee's Manager or Assistant Manager or, in the Manager's or Assistant Manager's absence, by the House Supervisor.

Section 4. Double Shift Overtime. For purposes of this Section, the term "double shift" shall mean two (2) back to back shifts of eight (8) or more hours each which overlap by one-half (1/2) hour. If an employee works a double shift at the request of the Employer, and unless otherwise required by the overtime or premium pay provisions of this Agreement, such employee shall be paid at his straight-time rate for the first full shift and shall be paid at time and one-half (1-1/2) for the second full shift (i.e. the one-half hour overlap between the double shifts shall be paid once at straight-time and once at time and one-half).

35

Section 5. <u>No Pyramiding of Overtime and/or Premium Pay</u>. There shall be no pyramiding of daily, weekly, and pay period overtime (i.e. overtime shall not be paid on the same hours twice); and there shall be no pyramiding of any overtime and/or premium pay (i.e. no hours worked shall be paid at a rate of more than time and one-half).

Section 6. <u>Premium Pay for Holiday Work</u>. (a) Regular full-time and regular part-time employees who work on the holidays designated in this Agreement shall be paid at time and one-half (1-1/2) their regular rate of pay for all such holiday hours worked.

(b)     With regard only to the Christmas and New Year's holidays, if an employee works on Christmas Eve or New Year's Eve (as the case may be) and if a majority of the hours in his shift fall after 3:00 p.m., then the employee shall be paid time and one-half (1-1/2) his regular rate of pay for all hours worked on said Christmas Eve or New Year's Eve shift.

Section 7. <u>Scheduled "On-Call."</u> Employees who are "on-call" on a regularly scheduled basis (i.e. those who are required to be available for and to report to work if called) shall be compensated as follows:

(a)     Such employees shall be paid $2.50 per hour for each hour of scheduled "on-call" time.

(b)     If a scheduled "on-call" employee is required to report for work while "on-call," the employee shall also be paid the following:

(i)     <u>In Surgery and C.P.D.</u>: Time and one-half (1-1/2) for all hours worked; provided, however, that if less than  two (2) hours are worked, the time between that which was worked and a  two (2) hour minimum shall be paid at straight-time.

(ii)     <u>In All Other Departments</u> (e.g. Lab, Medical Imaging, Nursing other than Surgery, etc.): Time and one-half (1-1/2) for all hours worked; provided, however, that if less than two (2) hours are worked, the time between that which was worked and a two (2) hour minimum shall be paid at straight-time.

Section 8. <u>Unscheduled Call-In</u>. Employees who are not on scheduled "on-call" pursuant to Section 7 of this Article (above), but who are called in to work hours in addition to their regularly scheduled hours, shall be paid as follows:

(a)     <u>In Surgery and C.P.D.</u>: Time and one-half (1-1/2) for all hours worked; provided, however, that if less than  two (2) hours are worked, the time between that which was worked and a two (2) hour minimum shall be paid at straight-time.

(b)     <u>In All Other Departments</u> (e.g. Lab, Medical Imaging, Nursing other than Surgery, etc.): Time and one-half (1-1/2) for all hours worked; provided, however, that if less than two (2) hours are worked, the time between that which was worked and a two (2) hour minimum shall be paid at straight-time.

(c)     Notwithstanding subparagraphs (a) and (b) above, if the unscheduled call-in adjoins the employee's regularly scheduled hours, the minimum call-in pay provisions of this Section 8 shall not apply.

Section 9.  <u>Show-Up Time</u>.  Employees who report for scheduled work and who are then advised that such work is either not available or not needed shall, if they were not notified (pursuant to Article 17, Section 3(b)) in advance of reporting, go home and receive three (3) hours' pay at straight-time rates; provided, however, that employees for which the Hospital has no current phone number shall not be allowed to collect the three (3) hours' pay.

Section 10.  <u>Meal Periods</u>.  If an employee's thirty (30) minute duty free meal period is lost or interrupted at the request of or with prior approval from the employee's supervisor, then and in such event the employee shall either:  (a) be paid for the lost or interrupted meal period, or (b) be afforded an alternate duty free meal period of thirty (30) minutes.  The Employer may require employees to remain on the premises during their meal periods; and any employee who is summoned to work during his/her meal period shall do so.

Section 11.  <u>Shift Differentials</u>.  (a) A shift differential premium of one dollar and thirty-five cents ($1.35) per hour shall be paid for: (i) any shift of four (4) or more hours commencing on or after 12:00 noon on any work day; or (ii) hours worked after 3:00 p.m. on any work day if the employee works four (4) or more consecutive hours after 3:00 p.m. as part of an eight (8) or more hour shift beginning prior to 12:00 Noon.

(b)     The shift differential premium shall be paid only for hours actually worked on a shift or shifts during which the shift differential premium is payable (pursuant to paragraph (a) above).

(c)     Notwithstanding subparagraph (b) above, for employees who were members of the bargaining unit represented by the Association as of September 25, 1992 <u>and</u> who have thereafter remained (without interruption) members of said bargaining unit, the shift differential premium shall be paid (when applicable) for time actually worked and shall also be included (if applicable) in an employee's vacation pay, holiday pay, sick pay and continuing education pay.  Even such "grandfathered" employees shall not, however, receive a shift differential premium for working an extra shift or shifts at times (e.g. first shift) where the shift differential premium is not payable.

Section 12.  <u>Weekend Premium</u>.  (a) Regular full-time employees and regular part-time employees shall be paid at time and one-quarter (1-1/4) their regular hourly rate of pay for all hours worked between 11:00 p.m. on Friday and 11:00 p.m. on Sunday unless any such employee was scheduled to work on the other day on the same weekend and failed, without acceptable reason to work his or her scheduled hours.

(b)     If two (2) employees desire to trade a scheduled Saturday or Sunday, they may request such a trade (in writing in accordance with Article 17, Section 3(c)).  If the trade is approved, and if either of the employees involved in the trade fails (for any reason) to work the day to which they traded, then such employee shall forfeit Weekend premium pay on a subsequent weekend for which the employee would otherwise be eligible for such premium.

Section 13.  Paramedic Charge Premium.  When a Paramedic is temporarily designated as a Paramedic Charge for a full shift, and is thereby required to perform Charge duties and responsibilities in the absence of the Department Manager throughout the shift, the Paramedic so designated shall receive a premium of sixty-five cents (65¢) per hour for the shift during which he is so designated.

Section 14.  Coast Guard Premium.  Regular full-time employees and regular part-time employees shall be paid at time and one-half (1-1/2) their regular hourly rate of pay for all hours worked on Coast Guard Saturday (i.e. between 11:00 p.m. on the Friday and 7:00 a.m. on the Sunday of the last Coast Guard Festival weekend).

Section 15.  Lead Technician Premium.  If management, in its sole discretion, names a laboratory technician in the area of microbiology, chemistry, hematology, or blood bank as a Lead Technician, or a respiratory therapist, polysomnographer, or echo tech as a Lead Technician, or a radiology technician as a Lead Technician, such employee shall receive a premium of $0.65 per hour for each hour worked as Lead Technician.

## ARTICLE 19.  PAY PERIOD AND PAY DAY

Section 1.  The Employer has a two (2) week pay period which ends simultaneously with the end of the second (2nd) shift every other Saturday.  All hours worked during such pay period will be paid on or before the following Friday.  Paper check stubs will not be provided to employees with direct deposit.  NOCH will provide 24-hour access to a computer and printer.

## ARTICLE 20.  BULLETIN BOARDS

Section 1.  The Employer shall provide bulletin board space (of 6 sq. ft.) which may be used for posting appropriate notices of employee and Association business in the form of notices and/or minutes of Association meetings and notices pertaining to Association elections and/or committee assignments.  The Bulletin Board shall be located in the general vicinity of the Employer's Bulletin Board for employee notices.  In addition, the Employer shall provide space near its second floor time clock for posting of Association meeting notices only, provided any such meeting notice has been approved by the Human Resources Office and does not exceed 3" x 5."

Section 2.  All notices other than those described above shall, prior to being posted, be submitted to the Administration (or its designee) for approval; and no such notice will be posted without such approval.

Section 3.  No notice, including those posted by the Association as provided herein and those posted by the Employer, shall be mutilated, destroyed or defaced.

Section 4.  Except as hereinabove permitted, there shall be no other general distribution or posting by employees or the Association of pamphlets, advertising or political matters, notices, or any other kind of literature upon the Employer's premises.

38

ARTICLE 21.  <u>SAFETY AND HEALTH</u>

<u>Section</u> 1.  It is the duty of each employee to report to his Manager or Assistant Manager any malfunction of equipment and/or any unsafe condition or conditions which he may observe.

<u>Section</u> 2.  The Employer's Environment of Care (EOC) Committee will formulate various safety policies to assure safe conditions in the Hospital.  These policies shall include, without limitation, a fire plan, a disaster plan, regular inspection of the Hospital, and investigation of all lost time accidents.

The Employer shall advise employees, by handbook, posting or otherwise, of its established safety policies, plans and regulations.  It is the duty of employees to know, understand and comply with all safety policies, plans and regulations.  Failure of an employee to adhere to such policies, plans and regulations may be treated by the Employer as cause for discipline.

<u>Section</u> 3.  Each new employee or prospective employee must submit to and pass a physical examination before being placed on the Employer's payroll.  The scope of the physical examination required shall be determined by the Employer, as well as by any applicable federal and/or state health standards, and shall be paid for by the Employer.

<u>Section</u> 4.  Each employee shall have such annual follow-up physical examinations and/or tests as may be required by the Employer.  The scope of the physical examination and/or test required shall be determined by the Employer, as well as by any applicable federal and state health standards, and shall be paid for by the Employer.  Failure of an employee to comply with this Section (including any required retests) may be treated by the Employer as cause for discipline (including the employee's removal from the work schedule).  Reasonable advance notice of the physical examination and/or test requirements, and of the potential consequences for noncompliance, shall be issued by the Employer.

<u>Section</u> 5.  The Employer shall designate, subject to confirmation or approval by the Association, two (2) bargaining unit employees to serve on the Employer's Safety Committee.

<u>Section</u> 6.  All employees will be required to receive a free mandatory Influenza Vaccine between October 1 and October 30 of each calendar year, beginning in 2018.  An employee's request for a medical or sincerely held belief exception must be submitted by October 1.  A medical exception request must be supported by a doctor's written medical opinion explaining the need for the exception.  A sincerely held belief exception request must be supported by a written explanation of the employee's sincerely held belief and any other documentation the employee wants to submit.  The employer may request to meet with an employee who has submitted a written request for exemption within 30 calendar days of submission.  Upon timely request, the employee will make him or herself available to discuss their request, and answer any questions.  All sincerely held belief exception requests will be reviewed within the guidelines of applicable federal law.  An employee who does not make a timely request for an exception, fails to provide valid proof of vaccination, or fails to get vaccinated shall be subject to the disciplinary

process.  Employees who are granted a medical or sincerely held belief exception must wear a mask while in patient care areas during influenza season.

## ARTICLE 22.  UNIFORM

Section 1.  The Employer, in its discretion, may require the wearing of a uniform of specific design and/or color for various departments within the Hospital.  Uniforms, including footwear, required by the Employer shall be provided by the employees at their own expense and shall be maintained and tailored by such employees according to rules and regulations established by the Employer.  No changes will be made to uniform colors during the first year of this agreement. Employees will be provided with a 6 month transition period for changes to uniform colors

Section 2.  Employees shall comply with any and all work rules pertaining to uniforms, gowns and/or their attire.

Section 3.  The Employer may, in its discretion, provide and maintain special items of attire or apparel (e.g. scrub gowns, foot covers, etc.); and employees shall wear such special items of attire or apparel in accordance with the Employer's requirements concerning the same.

Section 4.  Full-time Paramedics and EMTs will receive an annual (July 1-June 30) $300 clothing stipend to be used to purchase approved uniform shirts, pants and boots.  The annual stipend for part-time Paramedics and EMTs is $150.

## ARTICLE 23.  WAGES

Section 1.  Wage Schedule.  Employees shall be paid in accordance with the wage schedule(s) attached hereto and made a part hereof as Appendix "A" and in accordance with the following provisions of this Article.

Section 2.  New Hires/Previous Experience.  In the event the Employer hires a new bargaining unit employee with previous related experience and/or training, the Employer may, in its discretion, give the employee credit and place the employee on the wage schedule accordingly.

Section 3.  Full-Time Employees/Progression on Schedule.  Full-time employees shall progress from one step of the wage schedule to the next based on their continuous length of service in the classification, provided any such employee does not have aggregate or cumulative unpaid leaves of absence in excess of ninety (90) calendar days between any two steps on the wage schedule.  If, however, any such full-time employee does have aggregate or cumulative unpaid leaves of absence between any two steps on the wage schedule in excess of ninety (90) calendar days, then and in such event the employee's progression on the wage schedule will be delayed by the number of unpaid leave of absence days in excess of ninety (90) calendar days. (For example, a full-time employee on step 3 for a classification will progress to step 4 one year following placement on step 3 if the employee had aggregate or cumulative unpaid leaves of absence during said year of 90 calendar days or less.  If, however, a full-time employee on step 3 for a classification had aggregate or cumulative unpaid leaves of absence of 120 calendar days in the one year period following placement on step 3, such employee would not be eligible to move to step 4 until after 30 more [i.e.

the amount of unpaid leave in excess of 90] calendar days had been served on step 3).  Wage progression pursuant to this Section shall, however, be subject to the provisions of Section 5 below.

Section 4.  <u>Part-Time Employees/Progression on Schedule</u>.  Regular part-time employees shall progress from one step of the wage schedule to the next based on their paid hours in the classification in relation to full-time employment - e.g. a part-time employee would be eligible to progress from step 3 of the wage schedule to step 4 of the wage schedule after two thousand eighty (2,080) hours paid.  Wage progression pursuant to this Section shall, however, be subject to the provisions of Section 5 below.

Section 5.  <u>Effect of Performance</u>.  As a condition of progressing on the wage schedule pursuant to Sections 3 and 4 above, an employee shall not have had an unsatisfactory performance evaluation (in writing) within the preceding ninety (90) calendar days.  In the event of such unsatisfactory performance evaluation, however, the employee shall forego the wage progression for which he/she would otherwise be eligible; and, in such event, the employee shall be reevaluated upon completion of ninety (90) additional days.  An employee whose wage rate was frozen pursuant to this Section shall not further progress on the wage schedule until he/she receives a satisfactory performance evaluation (in writing).  Thereafter, eligibility for further progression on the wage schedule shall be based on the employee's length of service within the classification since his/her last wage schedule progression.

Section 6.  <u>Working Outside Classification</u>.  When an employee is temporarily assigned by his/her Manager to work in and perform all of the duties of a higher paying classification, <u>and</u> if the employee is fully qualified to do so, <u>and</u> if the temporary assignment is for at least three (3) eight hour shifts in a work week or at least two (2) twelve hour shifts in a work week, then such employee shall (during said assignment) be paid at the applicable (same step) higher hourly rate.

Section 7.  <u>Transfer or Promotion</u>.  (a)  An employee who transfers to a lower paying classification shall be placed on the step of the wage schedule for the new classification which the Employer determines, in its discretion, to be commensurate with the employee's training and experience with respect to the new classification.

(b)     An employee who is promoted to a higher paying classification shall be placed on the step of the wage schedule for the higher paying classification which the Employer determines, in its discretion, to be commensurate with the employee's training and experience with respect to the new classification.).

(c)     Following any such transfer or promotion, further progression on the wage schedule shall (subject to Section 5 above) be based on the employee's length of subsequent service in the new classification.

Section 8.  <u>Longevity Benefit</u>.  The following longevity benefit program shall apply, subject to and in accordance with the following terms and conditions:

(a)     Based on their years of service, eligible employees shall receive the following gross annual lump sum payment during the month of January:

41

- Employees with 20 to 24 years of service shall receive $300*;
- Employees with 25 to 29 years of service shall receive $500*; and
- Employees with 30 or more years of service shall receive $700*.

(b)     For purposes of this longevity benefit, the term "years of service" shall mean FTE years of service based on documented Hospital-wide seniority hours.  Years of service eligibility shall be determined as of the December 31st immediately preceding the January payment.

(c)     In addition to the foregoing eligibility requirements, the longevity benefit shall only be available to employees:

(i)     Who are at the top of the wage scale for their classification; and

(ii)    Whose most recent performance evaluation was satisfactory.
(*For employees at 64 or more status hours per pay period - with 1/2 these amounts for employees below 64 status hours.)

(d)     The longevity bonus shall be frozen effective October 24, 2018 as part of the freeze on wages and step increases.

## ARTICLE 24.  NO STRIKE

Section 1.  The Association agrees that during the term of this Agreement, it, its members, or any employees in the bargaining unit represented by it, will not, directly or indirectly, call, authorize, participate in, assist, encourage, condone, defend, or permit any strike, sit-down, stay-in, slow-down, work stoppage or any other interruption of or interference with the normal business or activities of the Hospital, including picketing.  Furthermore, the Association agrees to use its best efforts to prevent any of such prohibited conduct.

Section 2.  Any employee who engages in any activity prohibited by this Article shall be subject to disciplinary action.

## ARTICLE 25.  CONFIDENTIAL INFORMATION

Section 1.  Any and all information gathered or heard by or accessible to employees, officially or unofficially, about patients, other employees, and/or the families of patients or employees, shall be construed as confidential.  Release of such information by an employee to a patient, a fellow employee, or any unauthorized person shall be regarded as a breach of confidence and may be treated by the Employer as cause for discipline.

## ARTICLE 26.  PERFORMANCE EVALUATION

42

Section 1.  The job performance of each employee will be evaluated by the employee's supervisor and/or supervisors before completion of the probationary period.  Thereafter, the job performance of each employee will be periodically evaluated.  The Employer will make a concerted effort to evaluate all employees at least once a year.

Section 2.  In evaluating job performance, an employee's entire employment record may be considered, including (without limitation) the following actions:  job knowledge, quality and quantity of work, attitude and cooperation, attendance and punctuality, ability to work with others, and other performance factors.  Formal performance evaluations will be reviewed with the employee by his supervisor(s), Manager and/or Assistant Manager.   Specific recommendations for improvement in job performance may be made and explained to the employee.  When a performance evaluation is reviewed with an employee, the employee shall acknowledge receipt of the same by signing and dating it.  If the employee disagrees with his evaluation, he may prepare, date, and sign a written response to be attached to the evaluation.

Section 3.  Copies of the formal annual evaluation forms to be used by the Employer pursuant to this Article shall be available for review by employees in the Office of Human Resources; provided, however, that nothing herein contained shall preclude the use of other additional or supplemental evaluation reports.

Section 4.  When a written report criticizing an employee is to be placed in the employee's personnel file, the employee will be so notified and will be afforded an opportunity, if desired, to submit a statement of rebuttal or explanation to be attached to the report for inclusion in the file with it.

Section 5.  Although the same may be retained in the file, disciplinary records which are more than ten (10) years old will not be used or relied upon as the basis for subsequent disciplinary action.  The just cause standard may, depending on the facts of the case, take into consideration the timing of prior discipline.

## ARTICLE 27.  CHANGE IN PERSONAL STATUS; NOTICE; LICENSE

Section 1.  Employees shall promptly notify the Human Resources Department in writing of any change of name, address, telephone number, marital status or number of dependents, within fourteen (14) calendar days after such change has been made.  The Employer shall be entitled to rely upon the employee's last name, address, telephone number, marital status and number of dependents shown on its records for all purposes involving his employment and this Agreement.  The employee information referred to in this Section shall be used by the Employer for Hospital related and employment related purposes, but shall not be furnished to outside and unrelated sources except as may be required by law.

Section 2.  Any notice required or discussed in this Agreement shall be deemed given upon the delivery of the notice, whether sent through the United States Postal Service or otherwise, at the last known address of the party so charged with notice.

Section 3.  (a)  Employees shall immediately notify the Human Resources Office in writing of any change in their job-related certification and/or licensure status.

(b)     Employees shall file their new state licenses and/or certifications with the Human Resources Office on or before the expiration date of their old license or certification.  An employee who fails to comply with this requirement will not be removed from the schedule if:  (i) they provide proof of having timely applied and paid for license or certification renewal, and (ii) their license or certification remains valid under the state's grace period (if any) for such renewal.

(c)     Employees who fail to timely provide the Employer with any required license or certification renewals, satisfactory annual computerized Ed Day completion, satisfactory TB results, mask fit testing completion, or other professional credentials required by their job description or job assignment, shall be removed from the schedule until they do so.

## ARTICLE 28.  EMPLOYEE IDENTIFICATION

Section 1.  (a)  The Employer may issue a photo identification card to each employee.  If issued, this card must be carried or worn by the employee while on duty, as prescribed by the Employer. Employees will be responsible for the replacement costs of a new card if their card is lost or destroyed, unless the card is damaged during working hours at no fault of the employee.

(b)     Since such cards would serve as proof of employment, they must be returned to the Human Resources Office upon termination of employment.  Employees will be assessed a charge of $5.00 at the time of termination for failure to return the card; and such assessment may be deducted from the employee's final payment.

## ARTICLE 29.  SPECIAL CONFERENCES

Section 1.  In the interest of sound labor relations between the employees and the Employer, special conferences may be held by mutual agreement, for the purposes of meeting and conferring concerning important matters outside the provisions of this Agreement.   Arrangements for such conferences shall be handled by the President of the Association (or Acting President in the President's absence) and the Employer's President (or his designee).  It is understood and agreed that these special meetings shall be held within a reasonable period of time and shall not be for the purpose of conducting continuing collective bargaining negotiations, nor to in any way modify, add to, or detract from the provisions of this Agreement.

## ARTICLE 30.  MISCELLANEOUS PROVISIONS

Section 1.  Captions.  The titles used in the various Articles, Sections and paragraphs of this Agreement are for identification purposes only, and are not a substantive part of this Agreement.

Section 2. Severability. (a) If any Article, Section, paragraph or clause of this Agreement, or any riders thereto, shall be held invalid by operation of law, or by any tribunal of competent jurisdiction, or if compliance with or enforcement of any Article, Section, paragraph or clause shall be restrained by such tribunal pending a final determination as to its validity, the remainder of this Agreement and of any rider thereto, or the application of such Article, Section, paragraph or clause to persons or circumstances other than those as to which it has been held invalid or as to which compliance with or endorsement of has been restrained, shall not be affected thereby.

(b) In the event that any Article, Section, paragraph or clause of this Agreement is held invalid, or as to which compliance or enforcement has been restrained, as set forth above, the Employer and the Association shall promptly enter into collective bargaining for the purpose of arriving at a mutually satisfactory replacement for such Article, Section, paragraph or clause.

Section 3. Hospital Health Services. For all regular full-time and regular part-time employees, the Employer will provide, at no cost to such employees, the following health services:

(a) A skin test(s) at such intervals as the Employer may require.

(b) An x-ray(s), at such intervals as the Employer may require, if skin test positive.

(c) Employees under 40 years of age when requested in writing by their physician, and employees 40 years of age or older when done in connection with an annual physical examination, shall be eligible to receive one (1) free electrocardiogram per year.

Section 4. Pharmacy Discount. Regular full-time and regular part-time employees will be allowed to purchase, through the Hospital's Dunewood Pharmacy, prescriptions and supplies in accordance with pharmacy policy at the Hospital's cost plus ten percent (10%); provided, however, that each prescription shall be subject to a minimum charge of Ten Dollars ($10.00).

Section 5. Mileage Reimbursement. When an employee is required by the Employer to use his personal vehicle on Hospital business, the Employer will reimburse the employee, at the Hospital's then prevailing mileage reimbursement rate, provided such use was approved in advance.

Section 6. Liability Insurance. The Employer shall maintain a general liability insurance policy, with a carrier and with limits deemed appropriate by the Employer, providing coverage in accordance with the policy's terms and conditions.

Section 7. Payroll Deductions. (a) Employees may, pursuant to written, signed and dated payroll deduction authorization forms available through the Employer's Human Resources Office, authorize and request payroll deductions for the following purposes:

(i) Association dues or equivalent service fees check-off

(ii) Bank accounts

(iii) Credit Union accounts

45

(iv)    United Fund contributions

(v)    Tax-deferred Annuity Programs.

(b)    In addition, premium contributions required of employees toward the cost of group insurance benefits provided pursuant to this Agreement shall be made by payroll deduction.

(c)    All payroll deductions shall be subject to such payroll deduction procedures and provisions (e.g. limitation on number and type of bank accounts, annuity programs, etc.) as the Employer may establish.

Section 8.  Return of Property.  All employees shall, upon termination of employment, immediately return to the Employer any and all property, of any and every kind or description (e.g. pagers, badges, records, keys, equipment, etc.), belonging to the Employer or any of its agents, vendors, contractors or employees.

## ARTICLE 31.  ENTIRE AGREEMENT

Section 1.  The parties acknowledge that during the negotiations which resulted in this Agreement each had the right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that all of the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement.  Therefore, the Employer and the Association, for the life of this Agreement, each voluntarily waive the right, and each agrees that the other shall not be obligated, to further bargain collectively with respect to any subject or matter whether or not referred to or covered in this Agreement.  This Agreement, as set forth herein, states the entire agreement between the parties.

Section 2.  This Agreement supersedes and cancels all previous agreements, verbal or written or based on alleged past practices, and constitutes the entire agreement between the parties.  Any amendment or agreement supplemental hereto shall not be binding upon either party unless executed in writing by the parties hereto.

## ARTICLE 32.  DURATION OF AGREEMENT

This Agreement shall take effect as provided in the Preamble hereto, and shall continue in full force and effect from said date(s) until midnight on the 30th day of June 30, 2021, and shall be automatically renewed from year to year thereafter unless either party hereto shall give the other party at least sixty (60) days' written notice, by certified or registered mail, before the end of the term of this Agreement or before the end of any anniversary date thereafter, of its desire to terminate, modify or change this Agreement.

46

IN WITNESS WHEREOF, the parties hereto have, through their authorized representatives, executed this Agreement.

For the
NORTH OTTAWA COMMUNITY
HOSPITAL:

_____
Board Chairperson

_____
Board Secretary

_____
President


For the
NORTH OTTAWA COMMUNITY HOSPITAL
EMPLOYEES ASSOCIATION:


_____
President

_____
Committee

_____
Committee

_____
Committee

_____
Secretary

47

# APPENDIX A -- Wages and Schedules

## Effective October 24, 2018

(Steps refer to years of full-time equivalent service-with progression on schedule as provided in Article 23)

| Department/Classification | Start | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 8 | Step 10 | Step 12 | Step 14 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Laboratory** | | | | | | | | | | | |
| Transcriptionist | 12.05 | 12.36 | 12.80 | 13.11 | 13.68 | 13.99 | 14.31 | 15.21 | 15.89 | 16.57 | 17.24 |
| Med Tech I, ASCP | 22.39 | 22.71 | 23.25 | 23.58 | 24.36 | 24.68 | 25.01 | 26.12 | 26.80 | 27.49 | 28.05 |
| Med Tech II, ASCP | 23.53 | 24.05 | 24.56 | 25.07 | 25.58 | 26.10 | 26.61 | 27.63 | 28.66 | 29.68 | 30.71 |
| Lab Asst I, Phlebotomist | 11.82 | 12.12 | 12.56 | 12.87 | 13.43 | 13.75 | 14.07 | 14.98 | 15.66 | 16.32 | 16.76 |
| Lab Asst. II | 13.35 | 13.70 | 14.06 | 14.41 | 14.76 | 15.11 | 15.46 | 16.17 | 16.87 | 17.57 | 18.28 |
| Tissue Tech | 16.26 | 16.58 | 17.06 | 17.37 | 18.02 | 18.35 | 18.68 | 19.66 | 20.33 | 21.02 | 21.83 |
| Histologist - Reg | 16.92 | 17.24 | 17.74 | 18.06 | 18.72 | 19.05 | 19.37 | 20.38 | 21.08 | 21.78 | 22.27 |
| **CPD** | | | | | | | | | | | |
| CPD Technician | 10.87 | 11.17 | 11.60 | 11.91 | 12.45 | 12.77 | 13.08 | 13.97 | 14.66 | 15.32 | 15.98 |
| Lead CPD Tech. | 14.42 | 14.73 | 15.18 | 15.49 | 16.10 | 16.43 | 16.75 | 17.70 | 18.36 | 19.04 | 19.79 |
| **Medical Imaging** | | | | | | | | | | | |
| Med.Imag.Pat.Reg. Clerk | 11.92 | 12.22 | 12.66 | 12.97 | 13.53 | 13.85 | 14.17 | 15.07 | 15.75 | 16.43 | 17.10 |
| Tech. Reg. ARRT | 19.15 | 19.45 | 19.97 | 20.30 | 21.01 | 21.33 | 21.65 | 22.71 | 23.39 | 24.10 | 24.61 |
| Non Reg. ABRT | 16.28 | 16.78 | 17.44 | 17.94 | 18.80 | 19.30 | 19.82 | 21.18 | 22.22 | 23.26 | 23.77 |
| PACS Administrator | 18.79 | 19.28 | 19.97 | 20.47 | 21.37 | 21.89 | 22.91 | 24.33 | 25.36 | 26.40 | 27.32 |
| Nuclear Med Tech. | 22.44 | 22.78 | 23.30 | 23.63 | 24.41 | 24.74 | 25.07 | 26.17 | 26.88 | 27.56 | 28.12 |
| Ultra Sound Tech | 23.52 | 23.83 | 24.38 | 24.71 | 25.51 | 25.85 | 26.16 | 27.29 | 27.99 | 28.67 | 29.24 |
| CT Scan Tech | 21.47 | 21.80 | 22.32 | 22.65 | 23.39 | 23.73 | 24.06 | 25.16 | 25.85 | 26.54 | 27.08 |
| ARRT/CT Scan Tech | 20.31 | 20.62 | 21.14 | 21.46 | 22.20 | 22.52 | 22.85 | 23.93 | 24.61 | 25.31 | 25.83 |
| RDMS/RVT | 24.40 | 24.72 | 25.28 | 25.61 | 26.42 | 26.75 | 27.08 | 28.22 | 28.93 | 29.61 | 30.18 |
| Mammography Tech | 18.87 | 19.31 | 19.95 | 20.39 | 21.24 | 21.69 | 22.15 | 23.45 | 24.38 | 25.30 | 26.21 |
| Mammography Tech II | 20.31 | 20.77 | 21.41 | 21.87 | 22.75 | 23.19 | 23.64 | 24.97 | 25.91 | 26.83 | 27.73 |
| Med. Imaging Technical Asst. | 11.95 | 12.21 | 12.47 | 12.73 | 12.99 | 13.25 | 13.51 | 14.02 | 14.52 | 15.02 | 15.52 |
| **Pharmacy** | | | | | | | | | | | |
| Pharmacist - Cert. Tech | 13.07 | 13.37 | 13.82 | 14.14 | 14.73 | 15.05 | 15.36 | 16.30 | 16.99 | 17.68 | 18.12 |
| Pharmacist Lead Tech | 15.04 | 15.34 | 15.81 | 16.13 | 16.76 | 17.07 | 17.39 | 18.36 | 19.05 | 19.74 | 20.18 |
| **Cardiopulmonary** | | | | | | | | | | | |
| Resp. Therapist - Reg | 21.36 | 21.83 | 22.31 | 22.78 | 23.25 | 23.72 | 24.20 | 25.14 | 26.09 | 27.03 | 27.98 |
| **Sleep Lab** | | | | | | | | | | | |
| Registered Polysomnographer | 20.80 | 21.11 | 21.63 | 21.96 | 22.70 | 23.03 | 23.38 | 24.43 | 25.13 | 25.82 | 26.74 |
| **Electro Diagnostics** | | | | | | | | | | | |
| Echocardiography Tech | 23.52 | 23.83 | 24.38 | 24.71 | 25.51 | 25.85 | 26.16 | 27.29 | 27.99 | 28.67 | 29.24 |
| **Food Service** | | | | | | | | | | | |
| Cook | 11.41 | 11.73 | 12.14 | 12.46 | 13.01 | 13.32 | 13.66 | 14.54 | 15.21 | 15.89 | 16.32 |
| Production Worker | 9.51 | 9.81 | 10.21 | 10.53 | 11.04 | 11.35 | 11.68 | 12.55 | 13.21 | 13.89 | 14.50 |
| Patient Service Rep. | 10.95 | 11.25 | 11.68 | 12.00 | 12.55 | 12.86 | 13.18 | 14.07 | 14.75 | 15.42 | 16.06 |
| **Facilities Management** | | | | | | | | | | | |
| Mechanic I | 13.15 | 13.46 | 13.91 | 14.21 | 14.81 | 15.12 | 15.44 | 16.36 | 17.06 | 17.72 | 18.42 |
| Mechanic II | 16.90 | 17.21 | 17.70 | 18.01 | 18.68 | 19.00 | 19.32 | 20.31 | 21.00 | 21.68 | 22.17 |
| Mechanic III | 20.55 | 20.86 | 21.36 | 21.68 | 22.41 | 22.75 | 23.06 | 24.12 | 24.81 | 25.49 | 26.17 |
| Custodian | 9.99 | 10.30 | 10.72 | 11.03 | 11.56 | 11.87 | 12.19 | 13.07 | 13.75 | 14.42 | 15.04 |
| Housekeeping Aide | 9.51 | 9.81 | 10.21 | 10.53 | 11.04 | 11.35 | 11.68 | 12.55 | 13.21 | 13.89 | 14.50 |
| Lead Housekeeper | 11.07 | 11.37 | 11.80 | 12.11 | 12.67 | 12.98 | 13.29 | 14.18 | 14.86 | 15.53 | 15.97 |
| **Nursing** | | | | | | | | | | | |
| LPN II | 14.88 | 15.20 | 15.67 | 15.99 | 16.62 | 16.95 | 17.27 | 18.24 | 18.94 | 19.62 | 20.39 |
| Surgical Tech. | 15.17 | 15.48 | 15.95 | 16.27 | 16.92 | 17.23 | 17.57 | 18.55 | 19.23 | 19.93 | 20.40 |
| Certified Surgical Tech. | 17.25 | 17.56 | 18.04 | 18.36 | 19.02 | 19.34 | 19.66 | 20.66 | 21.35 | 22.05 | 22.52 |
| Nurse Aide | 11.05 | 11.35 | 11.79 | 12.10 | 12.66 | 12.98 | 13.29 | 14.19 | 14.87 | 15.55 | 15.99 |
| Unit Tech,Clerk,Tech/Clerk | 11.29 | 11.62 | 12.04 | 12.35 | 12.91 | 13.23 | 13.56 | 14.46 | 15.14 | 15.82 | 16.49 |
| **EMS** | | | | | | | | | | | |
| Paramedic | 16.94 | 17.26 | 17.71 | 18.03 | 18.67 | 18.99 | 19.32 | 20.29 | 20.97 | 21.65 | 22.13 |
| EMT | 13.00 | 13.33 | 13.75 | 14.10 | 14.50 | 15.00 | 15.45 | 16.00 | 16.50 | 17.00 | 17.50 |
| Communication Specialist | 11.13 | 11.44 | 11.87 | 12.17 | 12.74 | 13.05 | 13.37 | 14.27 | 14.96 | 15.65 | 16.29 |

| Department/Classification | Start | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 8 | Step 10 | Step 12 | Step 14 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Case Management** | | | | | | | | | | | |
| Social Worker MSW | 23.20 | 23.73 | 24.27 | 24.80 | 25.33 | 25.86 | 26.40 | 27.46 | 28.53 | 29.59 | 30.66 |
| **Health Info Management** | | | | | | | | | | | |
| HIM Clerk | 10.95 | 11.25 | 11.68 | 12.00 | 12.55 | 12.86 | 13.18 | 14.07 | 14.75 | 15.42 | 16.06 |
| Clinical Documentation Specialist | 20.48 | 20.90 | 21.25 | 21.60 | 21.95 | 22.30 | 22.65 | 23.35 | 24.05 | 24.75 | 25.45 |
| HIM Analyst Coder | 16.88 | 17.20 | 17.70 | 18.00 | 18.68 | 19.01 | 19.33 | 20.33 | 21.03 | 21.73 | 22.54 |
| Coder Assistant | 14.66 | 14.97 | 15.45 | 15.77 | 16.40 | 16.75 | 17.06 | 18.05 | 18.73 | 19.40 | 20.21 |
| Transcriptionist | 12.05 | 12.36 | 12.80 | 13.11 | 13.68 | 13.99 | 14.31 | 15.21 | 15.89 | 16.57 | 17.24 |
| **Material Management** | | | | | | | | | | | |
| Mat. Mgmt. Buyer | 15.10 | 15.40 | 15.87 | 16.18 | 16.81 | 17.13 | 17.45 | 18.40 | 19.08 | 19.77 | 20.33 |
| Supply Aide/Courier | 10.31 | 10.63 | 11.04 | 11.34 | 11.88 | 12.20 | 12.52 | 13.41 | 14.08 | 14.76 | 15.38 |
| Materials Handler | 11.04 | 11.34 | 11.77 | 12.08 | 12.63 | 12.95 | 13.26 | 14.15 | 14.83 | 15.50 | 15.94 |
| **Patient Accounts** | | | | | | | | | | | |
| Biller | 11.39 | 11.71 | 12.12 | 12.44 | 12.99 | 13.30 | 13.64 | 14.52 | 15.19 | 15.87 | 16.54 |
| Logging Clerk | 11.39 | 11.71 | 12.12 | 12.44 | 12.99 | 13.30 | 13.64 | 14.52 | 15.19 | 15.87 | 16.54 |
| Financial Counselor | 13.31 | 13.64 | 14.07 | 14.38 | 14.97 | 15.29 | 15.62 | 16.54 | 17.22 | 17.90 | 18.61 |
| Systems Support Spec. | 13.31 | 13.64 | 14.07 | 14.38 | 14.97 | 15.29 | 15.62 | 16.54 | 17.22 | 17.90 | 18.61 |
| Cashier | 10.95 | 11.25 | 11.68 | 12.00 | 12.55 | 12.86 | 13.18 | 14.07 | 14.75 | 15.42 | 16.06 |
| **Patient Registration** | | | | | | | | | | | |
| Pat. Reg. Clerk | 11.92 | 12.23 | 12.67 | 12.97 | 13.53 | 13.86 | 14.17 | 15.08 | 15.75 | 16.41 | 17.10 |
| Central Scheduler | 13.21 | 13.52 | 13.97 | 14.27 | 14.87 | 15.18 | 15.51 | 16.44 | 17.11 | 17.78 | 18.23 |
| Pre-Adm. Review Specialist | 13.45 | 13.81 | 14.23 | 14.61 | 15.10 | 15.47 | 15.83 | 16.62 | 17.25 | 17.92 | 18.46 |
| **Volunteer Dept.** | | | | | | | | | | | |
| Ambassador | 10.95 | 11.25 | 11.68 | 12.00 | 12.55 | 12.86 | 13.18 | 14.07 | 14.75 | 15.42 | 16.06 |
| **Physician Practice** | | | | | | | | | | | |
| Medical Assistant | 13.87 | 14.17 | 14.47 | 14.77 | 15.07 | 15.37 | 15.67 | 16.28 | 16.88 | 17.48 | 18.09 |
| Exercise Physiologist | 18.92 | 19.27 | 19.63 | 19.99 | 20.34 | 20.71 | 21.06 | 22.08 | 23.10 | 24.11 | 25.12 |
| **Other** | | | | | | | | | | | |
| Clin. Quality Assurance Liaison | 14.88 | 15.20 | 15.67 | 15.99 | 16.62 | 16.95 | 17.27 | 18.24 | 18.94 | 19.62 | 20.39 |

The Wage Rates listed above will be frozen, and will not increase during the first year of this contract.  There will also be no Step increases in the first year of the contract.  The Employer and Association agree to wage re-opener negotiations only on or about November 1, 2019 for the purposes of the second year of the contract.  There will be no wage rate or step increases in the second year of the contract unless it is agreed to in the wage re-opener negotiations.

If any other group of NOCH employees receives a wage increase during the time when wages are frozen for NOCHEA, then the Employer will negotiate with NOCHEA over a wage increase for NOCHEA.  Wage increases given to other groups of employees which are triggered by a market adjustment in order to attract and/or retain employees will not trigger a duty to negotiate with NOCHEA.

APPENDIX B
Letters of Understanding
(Certification Bonus)

The Hospital (NOCH) and the Association (NOCHEA) further agree, with respect to the collective bargaining agreement between them, as follows:

1.    Certification Bonus.  An employee who becomes certified in his/her particular area of expertise (i.e. in an area directly related to his/her classification and position) shall, subject to the provisions of this paragraph, receive a certification bonus as follows:

(a)    Employees who are between Step 1 and Step 6 at the time of certification will be moved up one step on the wage schedule and will receive a one-time supplemental gross lump sum payment in an amount determined as follows:  The difference between the hourly rate increase the employee received by moving up one step and fifty cents (50¢) multiplied by the employee's annual status hours;

(b)    Employees who are on Step 6, 8 or 10 at the time of certification will be moved up one step on the wage schedule, but will not receive a supplemental lump sum payment; and

(c)    Employees who are at the top of their pay range (i.e. Step 12) at the time of certification will receive a one-time gross lump sum payment in an amount determined by multiplying fifty cents (50¢) times the employee's annual status hours.

To be eligible for the above certification bonus, an employee must:

(a)    Have provided the Department Manager, in advance of certification, with any certification and testing materials and criteria requested (e.g. to establish the direct benefit to the employee and the Hospital in the employee's current position and to support the credibility of the certifying agency or entity, etc.);

(b)    Provide satisfactory proof of certification upon its completion; and

(c)    Receive the Human Resources Department's approval for the certification bonus.

The certification bonus shall not apply to a re-certification or certification renewal.

Dated:  August 27, 2007.

FOR NORTH OTTAWA
  COMMUNITY HOSPITAL

FOR NORTH OTTAWA
COMMUNITY HOSPITAL
EMPLOYEES ASSOCIATION

_____

_____

50

APPENDIX B-1
Letter of Understanding
(Incentive)

The following "Letter of Understanding," which does not constitute part of the parties' Collective Bargaining Agreement per se, nevertheless accompanies said Agreement and is entered into by the Hospital and the Association in accordance with its terms:

Letter of Understanding
Between
North Ottawa Community Hospital
And
North Ottawa Community Hospital Employees Association

**In an effort to promote staffing when there is an unanticipated critical staffing need (e.g. sudden increase in patient census and/or acuity, multiple ill or emergency calls, etc.), the following incentive provisions will apply:**

| | |
|---|---|
| Eligible: | LPNs, RTs, Unit Techs and Unit Clerks (excluding casual and per diem), rad tech (both registered and non-registered), Paramedics, and EMTs. |
| Shifts: | All shifts |
| Incentive: | $5.00 per hour for any full (not fractional) hours worked (if four [4] hours or more) on an additional shift* |
| Applicable: | When there is an open shift of four (4) or more hours due to an unexpected absence (e.g., illness, death in family or family illness) arising with less than 48 hours' notice or another unanticipated critical staffing need arising with less than 48 hours' notice. |
| Other: | An employee who is otherwise eligible for the incentive pay rate will not forfeit or lose the incentive bonus by virtue of having taken PTO or a "stay home" during the same pay period. |
| Non-applicable: | Does not apply to any scheduled PTO use, to any holiday time back (i.e. alternate holidays), or to any other situation not addressed in this letter of understanding. |
| Effective Date: | This letter of understanding took effect on December 1, 2009 and shall expire on June 30, 2021 (unless extended). |

*       Additional shift means only a shift which is in addition to the employee's regularly assigned work schedule, which is approved by the Department Manager or House Supervisor, and which the Department Manager or House Supervisor determines to fill through use of this letter of understanding.

For NOCH:

_____

For NOCHEA:

_____

51

APPENDIX B-2

Letter of Understanding
(Preceptor Premium)

The North Ottawa Community Hospital ("NOCH") and the North Ottawa Community Hospital Employees Association ("NOCHEA") enter into this Letter of Understanding for the sole purpose of providing a preceptor premium for certain employees who serve in a preceptor capacity for students completing an internship at North Ottawa Community Hospital and/or for new Surgical Techs.

(1) An employee in Surgery (e.g. Surgical Technologist), in Medical Imaging, or in another department which provides training for students enrolled in a non-Hospital (e.g. Baker College) training program, and/or (2) a Surgical Tech who serves as a preceptor for Surgical Techs newly employed by the Hospital, shall receive a preceptor premium of $1.00 per hour if all of the following criteria are met:

(1)     The employee has satisfied and continues to satisfy such certification and/or other qualifications and/or requirements as may be prescribed by the Department Manager and Human Resources as a condition of serving as a preceptor;

(2)     The employee has successfully completed his/her probationary period;

(3)     The employee successfully completes and satisfies such preceptor orientation as may be required by the Department Manager and Human Resources;

(4)     The employee demonstrates such other attributes – e.g. professional ability, reliability, experience, qualifications as a trainer, etc. – as the Department Manager and Human Resources deem important for a preceptor;

(5)     The employee is designated by the Department Manager to serve as a preceptor for the purpose of providing in-Hospital training to students enrolled in a non-Hospital training program and/or for new Surgical Techs; and

(6)     The employee is actually serving as a preceptor – i.e. the preceptor premium will only be paid for time spent as a preceptor.

This Letter of Understanding shall not be precedent setting.

Dated: August 27, 2007.
For North Ottawa                             For North Ottawa Community Hospital
  Community Hospital (NOCH)                     Employees Association (NOCHEA)

By: _____              By: _____
Its: _____             Its: _____
                          APPENDIX B-3

Letter of Understanding
(Extended Second Shift Overtime)
- - - - - - - - - -

       Background.  (a)  A "work day" is defined in the parties' collective bargaining agreement (CBA) as a 24 hour period from 11:00 p.m. to 11:00 p.m.

      (b)     The CBA further provides that, except for employees working "creative or flexible schedules" (pursuant to Article 18, Section 3), time and one-half (1-1/2) will be paid for hours worked in excess of eight (8) hours per work day.  (See Article 18, Section 1).

      (c)     Under these provisions, which are both legal and negotiated, a first shift employee who is held over beyond 8 hours will receive overtime for the extended hours worked beyond 8 hours and after 3:00 p.m. (i.e. because the extended hours still fall in the same "work day").  Similarly, a third shift employee who is held over beyond 8 hours will also receive overtime for the extended hours worked beyond 8 hours and after 7:00 a.m. (because the extended hours also fall in the same "work day").

      (d)     If, however, a second shift employee is held over beyond 8 hours, the extended hours after 11:00 p.m. fall in the next "work day." This creates the possibility that the second shift employee might not receive overtime for the extended shift hours (i.e. those in excess of 8) unless the employee also works a full shift the next day (thereby exceeding 8 hours during that day) or unless the employee works a full 80 hour schedule (excluding the extended shift hours) during the two week pay period (in which case the extended shift hours would qualify for pay period overtime).

      THEREFORE, in an effort to address the potential inequity (identified in paragraph (d) above) applicable to second shift employees, NOCH and NOCHEA agree as follows:

      1.     A second shift employee who is subject to the "daily overtime" provisions of Article 18, Section 1 of the CBA, will receive overtime pay for all hours worked continuously in excess of 8 hours, notwithstanding the fact that the extended shift hours (i.e. those after 11:00 p.m.) fall in the next "work day."

      2.     Notwithstanding the provisions of paragraph 1 above, however, no employee will be eligible for overtime pay on the same hours twice – i.e. if the extended second shift hours qualify for daily overtime on the next work day, or for pay period overtime, such extended shift hours will not be paid at overtime rates more than once.

      Dated:  December 1, 2009.

For North Ottawa
  Community Hospital (NOCH)

By: _____
Its: _____

For North Ottawa Community Hospital
  Employees Association (NOCHEA)

By: _____
Its: _____

APPENDIX C

(5/30/07)

NORTH OTTAWA COMMUNITY HOSPITAL
401(k) PLAN INFORMATION SUMMARY*

PLAN NAME:        North Ottawa Community Hospital Proposed 401(k) Retirement Plan

EFFECTIVE DATE: January 1, 2008

COMPENSATION:   W2 – Participating

ELIGIBILITY:            Age 21 with one Year of Service – must be in Covered Employment; Covered Employment excludes leased employees, non-resident aliens, and employees of affiliates.

PLAN ENTRY:           January 1 and July 1

HOURS OF SERVICE:   Actual Hours Worked

YEARS OF SERVICE:   Eligibility – 1,000 hours; Vesting – 1,000 hours; Employer Base Contribution – 1,000 hours

NORMAL RETIREMENT:  Age 65

EMPLOYEE DEFERRALS: Up to the maximum allowed; Special election for bonuses (if applicable); Catch-ups allowed

MODIFICATIONS:      Allowed each payroll period

EMPLOYER MATCH:      NOCH will match .25% for every 1% contributed by the employee, up to a maximum 4% employee contribution.

*Note:  This information summary does not supersede the Summary Plan Description or the language of the Plan.

PLAN DESIGN PROPOSAL (CONTINUED)

EMPLOYER BASE
  CONTRIBUTION:

Effective January 1, 2019, the amount of any Employer Base Contribution will be determined each Plan Year by NOCH in its discretion.  A Contribution, if any, will be based upon an eligible employee's compensation, or a flat dollar amount as stated in the Plan document.

Note:  The foregoing is a description of the calculation formula.  No other Plan definitions or requirements are affected by this change in the calculation formula.  It does not replace or supersede the language in the Summary Plan Description, or the actual 401(k) Plan document.

| | |
|---|---|
| FORFEITURES: | Used to reduce future employer contributions |
| VESTING: | 3-year cliff on Employer Base Contribution only.  All other accounts 100% vested at all times |
| ROLLOVERS: | Permitted – participants only |
| HARDSHIP: | Allowed – restricted to deferrals; Deferrals suspended six months |
| LOANS: | Not permitted |
| DISTRIBUTION: | Immediate; Lump Sum |
| IN-SERVICE DISTRIBUTION: | Permitted at attainment of age 59½ from accounts that are 100% vested |

APPENDIX D-1

<u>Letter of Understanding</u>
(Paid Time off Cap)

The Hospital (NOCH) and the Association (NOCHEA) agree, with respect to the collective bargaining agreement between them, as follows:

1. <u>Paid Time Off Cap</u>.  During bargaining for a new contract in 2018, NOCHEA and NOCH agreed to reduce the amount of the Paid Time Off (PTO) that an employee can carry over from one year to the next ("PTO Cap").  The PTO Cap was reduced by 80 hours for full-time employees, and by 40 hours for part-time employees, effective March 3, 2019.

2. An employee whose current PTO bank exceeds the new PTO Cap will have until March 2, 2019 to use up any PTO which exceeds the new PTO Cap without losing the right to continue accruing PTO between now and March 2, 2019.  After March 2, 2019, per the existing PTO policy, employees whose PTO banks exceed the new PTO Cap will not accrue any more PTO unless they are below the new PTO Cap.

Dated:  ~~January~~ February  13  , 2019

FOR NORTH OTTAWA
COMMUNITY HOSPITAL

_signature_

FOR NORTH OTTAWA
COMMUNITY HOSPITAL
EMPLOYEES ASSOCIATION

_signature_

56

APPENDIX D-2

<u>Letter of Understanding</u>
(Paramedic Wage Adjustment)

The Hospital (NOCH) and the Association (NOCHEA) agree, with respect to the collective bargaining agreement between them, as follows:

1. <u>Paramedic Wage Adjustment.</u> Prior to completing negotiations on a new contract in 2018, NOCH determined that a market adjustment was necessary for employees working as a Paramedic. This was discussed with NOCHEA, which accepted the market adjustment proposal.

2. Effective October 28, 2018, the start rate and all steps in the Paramedic Wage Scale will be increased by $1.50/hour.

3. Paramedics who successfully complete the Enhanced Paramedic Training, will also receive an additional fifty cent ($ .50) increase in their individual hourly rate.

4. The Paramedic Wage Scale is amended as follows, effective October 28, 2018.

**PARAMEDIC WAGE SCALE**

| Start | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 8 | Step 10 | Step 12 | Step 14 |
|-------|--------|--------|--------|--------|--------|--------|--------|---------|---------|---------|
| $16.94 | $17.26 | $17.71 | $18.03 | $18.67 | $18.99 | $19.32 | $20.29 | $20.97 | $21.65 | $22.13 |

5. Additionally, an EMT Wage Scale will be implemented as follows, effective April 12, 2018.

**EMT WAGE SCALE**

| Start | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 8 | Step 10 | Step 12 | Step 14 |
|-------|--------|--------|--------|--------|--------|--------|--------|---------|---------|---------|
| $13.00 | $13.33 | $13.75 | $14.10 | $14.50 | $15.00 | $15.45 | $16.00 | $16.50 | $17.00 | $17.50 |

6. The EMT per diem rate will be $19.00/hour, effective August 2, 2018.

Dated: ~~January~~ February 13 , 2019

FOR NORTH OTTAWA
COMMUNITY HOSPITAL

_____

FOR NORTH OTTAWA
COMMUNITY HOSPITAL
EMPLOYEES ASSOCIATION

_____

57