## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ELIZABETH KERWIN, Regional Director
Seventh Region of the National Labor
Relations Board, for and on behalf of the
NATIONAL LABOR RELATIONS BOARD,
    Petitioner,

v.

                CIVIL Case No. 22-cv-00445

TRINITY HEALTH GRAND HAVEN HOSPITAL,  Hon. Robert J. Jonker

    Respondent.

## PETITIONER'S RESPONSE IN OPPOSITION TO RESPONDENT'S MOTION FOR JUDGMENT ON THE PLEADINGS

### STATEMENT OF ISSUES PRESENTED

1. Whether Respondent Trinity Health Grand Haven Hospital is entitled to judgment on the pleadings in the absence of a showing that removal protections for administrative law judges and members of the National Labor Relations Board inflicted harm on Respondent?

2. Whether Respondent has demonstrated, as a matter of law, that such removal protections are unconstitutional?

### BACKGROUND

### I. Statutory and regulatory background

The National Labor Relations Board ("NLRB") is the principal federal agency protecting the rights of employes under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151, *et seq.*, to form and join unions, to engage in concerted activity for mutual aid and protection, or to refrain from such activities. 29 U.S.C. § 157. One of the key functions of the NLRB—and the function directly at issue in this case—is its role in adjudicating allegations that an employer or

1

union has committed an "unfair labor practice" ("ULP"). *Id*. at § 160. Such allegations arise out of charges filed by members of the public, and formal proceedings do not commence unless and until the NLRB's General Counsel, or her delegate in a regional office, finds merit to the charge and issues an administrative complaint. *Id*. at § 160(b). In most cases where a complaint is issued, it will be issued concurrently with a notice of hearing before an administrative law judge ("ALJ"). Although most contested cases are litigated before an ALJ, the Act also allows such hearings to be held "before the Board or a member thereof." *Id.*

The NLRB's ALJs are appointed in accordance with the Civil Service Reform Act, 5 U.S.C. § 3105, and the NLRA, 29 U.S.C. § 154(a). *See WestRock Servs., Inc.*, 366 NLRB No. 157, slip op. at 2-3 (Aug. 6, 2018). Once an ALJ issues a recommended decision, parties may file "exceptions" on any contested issue, asking the Board[1] itself to rule upon this matter. 29 C.F.R. § 102.46(a). In doing so, the Board is not bound to accept either the ALJ's findings of fact or conclusions of law. 29 U.S.C. § 160(c). Indeed, the Board has explicit statutory authorization to take additional evidence upon notice to the parties. *Id*.

The Board is comprised of five members who are appointed by the President with the advice and consent of the Senate. *Id*. § 153(a). Board members serve five-year, staggered terms, and may be removed only "for neglect of duty or malfeasance in office." *Id*.[2] The Board issues final orders in ULP cases under Section 10(c) of the NLRA, *id*. § 160(c), conducts and certifies

---

[1] Where this brief refers to "the Board," it means the five-member adjudicative body established by Congress to decide cases under the NLRA. Where it refers to "the NLRB," it means the agency as a whole, including the Board, the General Counsel, and regional staff.

[2] Traditionally, the five seats on the Board are split between three members from the President's party and two from the opposition party. 2 The Developing Labor Law: the Board, the Courts, and the National Labor Relations Act, ch. 31.I.B (John E. Higgins, Jr., et al., eds., 7th ed. 2017).

the outcome of union-representation elections under Section 9 of the NLRA, *id*. § 159, and promulgates rules and regulations under Section 6 of the NLRA, *id*. § 156.

Orders of the Board, however, are not self-enforcing. Section 10(e) of the NLRA provides that the Board must seek enforcement of its orders from an appropriate court of appeals for such orders to become enforceable as judicial injunctions. *Id.* § 160(e). Conversely, any "aggrieved person" may seek to set aside a final Board order in a court of appeals under Section 10(f) of the NLRA. *Id*. § 160(f). Only upon enforcement by a court of appeals does a Board order become fully effective against a respondent. *See Mitchellace, Inc. v. NLRB*, 90 F.3d 1150, 1159 (6th Cir. 1996) ("An NLRB remedial order is not self-executing, and the 'respondent can violate it with impunity until a court of appeals issues an order enforcing it.'" (quoting *NLRB v. P\*I\*E Nationwide, Inc.*, 894 F.2d 887, 890 (7th Cir. 1990))). But, by virtue of the NLRA's design, district courts generally lack jurisdiction to review or supervise the conduct of NLRB proceedings. *Bokat v. Tidewater Equip. Co.*, 363 F.2d 667, 673 (5th Cir. 1966) (explaining that district courts "have a very very minor role to play in this statutory structure"); *see also Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938).

One of the few areas of district court jurisdiction under the NLRA is the power to hear and decide petitions for temporary injunctive relief brought by NLRB regional staff, on behalf of the Board, under Section 10(j) of the Act. 29 U.S.C. § 160(j). Whenever a final Board order in a ULP case may be rendered ineffective by the time it takes for the NLRB's usual process to unfold, the Board may authorize an action in district court for such injunctive relief. Any such injunction expires when the Board issues its final order in the underlying case. *See id*.; 29 C.F.R. § 101.37; *McKinney v. Starbucks Corp.*, 77 F.4th 391, 397 (6th Cir. 2023), *rev'd on other grounds,* 144 S. Ct. 1570 (2024).

3

ALJ removal proceedings are defined by statute. With a handful of listed exceptions, ALJs may be removed "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")] on the record after opportunity for hearing before the [MSPB]." 5 U.S.C. § 7521(a). Accordingly, removal of an NLRB ALJ is a two-step process: (1) the Board must bring an action to remove an ALJ; and (2) the MSPB must determine that good cause for removal has been established. The MSPB has applied "good cause" to remove or suspend ALJs for a variety of reasons. *See*, *e.g.*, *HHS v. Jarboe*, 2023 MSPB 22, ¶ 3 (Aug. 2, 2023) ("failure to follow instructions"); *SSA v. Anyel*, 58 MSPR 261, 269 (1993) ("ignor[ing] binding agency interpretations of law"); *SSA v. Burris*, 39 MSPR 51, 57 (1988) ("disrespectful conduct"); *SSA v. Goodman*, 19 MSPR 321, 328 (1984) ("poor performance"). MSPB members also can only be removed for cause. *See* 5 U.S.C. § 1202(d) ("Any member of the [MSPB] may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause.").

## II.    Procedural background

As set forth fully in the Petition for Preliminary Injunction [ECF No. 1] and Brief in Support [ECF No. 2], SEIU Healthcare Michigan ("the Union") filed charges with the NLRB alleging that Respondent engaged in unfair labor practices, including unlawfully withdrawing recognition from the Union. [Pet. Exh. A, ECF No. 1-2]. Upon investigation of the charges and full consideration of Respondent's evidence and argument, Petitioner Elizabeth Kerwin, the Regional Director for NLRB Region 7, determined that there was reasonable cause to believe that Respondent violated the NLRA as alleged. Therefore, on January 29, 2024, Petitioner issued a Consolidated Complaint and Notice of Hearing. [Pet. Exh. B, ECF No. 1-3]. On February 12, 2024, Respondent filed its Answer and Affirmative Defenses to the Consolidated Complaint,

admitting that it withdrew recognition from the Union but denying it violated the NLRA. [Pet. Exh. C, ECF No. 1-4]. An administrative hearing on the Complaint allegations opened on April 3, 2024, in Grand Rapids, Michigan, before Administrative Law Judge Michael A. Rosas. [ECF No. 16, PageID.2373].[3]

On April 30, 2024, Petitioner filed with this Court a Complaint and Petition for Preliminary Injunction under Section 10(j) of the National Labor Relations Act [ECF No. 1] and a brief in support of that petition. [ECF No. 2]. Petitioner requested expedited consideration of her preliminary-injunction request. [ECF No. 1, PageID.1]. Respondent filed its response in opposition to the preliminary-injunction petition on May 31, 2024. [ECF No. 15]. That same day, it filed an Answer in which it raised, as affirmative defenses, structural challenges to "the manner in which [the NLRB] processes and adjudicates cases." [ECF No. 16, PageID.2385]. On July 1, Respondent filed a Motion for Judgement on the Pleadings and supporting brief, raising challenges to the removal protections for NLRB Board members and ALJs. [ECF Nos. 35, 36].

## LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) turns on legal issues, not an assessment of the evidence. *Jones v. Pramstaller*, 678 F. Supp. 2d 609, 614-15 (W.D. Mich. 2009). When deciding a Rule 12(c) motion brought by the defendant, a court must accept all the complaint's well-pleaded factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and view the complaint in the light most favorable to the plaintiff. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). Judgment on the pleadings is proper "when no material issue of fact exists and the party making the motion is

---

[3] Respondent has informed this Court that the unfair-labor-practice hearing closed on May 15, 2024, [ECF No. 24, PageID.2429], though this fact is not contained in the parties' pleadings.

entitled to judgment as a matter of law." *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021) (internal citations omitted).

## ARGUMENT

**I.      Respondent's challenge to ALJs' removal protections is not relevant to the Board's request for temporary injunctive relief under Section 10(j) of the NLRA.**

Respondent begins its motion with a challenge to the statutory removal protections Congress granted to administrative law judges—protections that are accorded not just to NLRB ALJs but to ALJs across the federal government. But Respondent never explains why this challenge, even if it were meritorious (which it is not), ought to result in the dismissal of the Petition. Respondent complains that it "has been, and will continue to be, forced to litigate unfair labor practices charges before an NLRB ALJ who is unconstitutionally protected from removal by the President." [ECF No. 36, PageID.2691]. Yet, even if this Court granted Respondent's motion, that administrative litigation would continue.

Respondent concedes, as it must, that the only jurisdictional prerequisite in a 10(j) case is the issuance of "[a] complaint for unfair labor practices." [ECF No. 36, PageID.2694]. ALJs have no role in that process. Rather, the power to issue complaints belongs to the General Counsel of the NLRB and the regional staff she supervises. 29 U.S.C. § 153(d). Here, there is no dispute that Petitioner, who is supervised by and accountable to the General Counsel, *id.*, issued the underlying unfair-labor-practice complaint against Respondent.

Furthermore, ALJs do not participate in the decision to seek 10(j) relief.  Instead, the power to petition a district court for temporary injunctive relief under Section 10(j) belongs to the five-seat Board. Sometimes the Board has delegated the power to authorize the filing of a

10(j) petition to the General Counsel, but it has never delegated that power to an ALJ.[4] And Respondent does not allege any deviation from this practice.

Accordingly, Respondent's challenge to ALJ removal protections does not implicate the propriety of the Petition in this case. Unable to tether its ALJ-removability challenge to the predicates for seeking 10(j) relief, Respondent instead claims that this case must be dismissed because it is "ancillary to" the underlying unfair-labor practice case. [ECF No. 36, PageID.2700]. Specifically, Respondent contends that "the matter before this Court stems from, and relies upon, the underling [sic] unfair labor practice proceedings" because "Petitioner stated that she will exclusively rely upon the record in those proceedings" here. [ECF No.36, PageID.2691]. But even if this Court were to find that allegedly unconstitutional tenure protections precluded it from relying on the record developed before the administrative law judge, the Petition would not need to be dismissed. Instead, the Petition could be decided based on an independent evidentiary record developed at a hearing before this Court. *See, e.g.*, *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1078-79 & n.3 (3d Cir. 1984) (district court held three-day evidentiary hearing, made findings of fact, and denied injunctive relief prior to hearing before ALJ).

Accordingly, because Respondent has failed to explain why its challenge to ALJs' removal protections has any bearing on this case, it is not entitled to judgment on the pleadings as to that defense.

---

[4] Pursuant to Section 3(d) of the NLRA, 29 U.S.C. § 153(d), the Board may lawfully delegate its Section 10(j) authority to the General Counsel. Thus, the Board "may reserve to itself the ultimate decision whether to petition for § 10(j) relief," but may also authorize the General Counsel "to decide in which cases to seek relief on the Board's behalf." *See Frankl v. HTH Corp.*, 650 F.3d 1134, 1343-47 (9th Cir. 2011); *Glasser v. Heartland – Univ. of Livonia, MI, LLC*, 632 F. Supp. 2d 659, 662 (E.D. Mich. 2009) (joining "other district courts in holding that" § 3(d) allows the Board to delegate § 10(j) authority to the General Counsel).

## II.     Respondent cannot succeed on its removal-based claims because it fails to allege prejudicial harm and, in any event, the challenged removal protections are constitutional.

Respondent claims that removal protections for both the NLRB's Board members and its ALJs are unconstitutional. [ECF No. 32, PageID.2696 – 2701]. However, to obtain a remedy on either of those claims, Respondent must show that the removal protections "'inflicted harm,' such as by preventing superior officers from removing Board members when they attempted to do so, or possibly by altering the Board's behavior." *Calcutt v. FDIC*, 37 F.4th 293, 316 (6th Cir. 2022), *rev'd per curiam on other grounds*, 598 U.S. 623 (2023). Such a showing cannot be satisfied by "vague, generalized allegations." *Id.* at 317. Rather, "a more concrete showing [i]s needed." *Id.* Respondent has made no effort to clear this high bar for relief, and this failure is dispositive.

Moreover, Respondent's arguments fail on the merits. Multiple courts of appeals have recognized that Congress may shield administrative law judges performing purely adjudicatory functions from at-will removal. *See Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 764 (10th Cir. 2024); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1132-36 (9th Cir. 2021). Consistent with these holdings, the Sixth Circuit has expressed serious "doubt[s]" that those subject to agency enforcement proceedings "could establish a constitutional violation from the ALJ removal restrictions" enacted by Congress. *Calcutt*, 37 F.4th at 319 (internal citations omitted). Additionally, Respondent's argument concerning removal protections for Board members is foreclosed by *Humphrey's Executor v.  United States*, 295 U.S. 602 (1935), which "still protects any 'traditional independent agency headed by a multimember board'"—and thus still protects the Board. *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 352

(5th Cir. 2024), *petition for cert. filed*, No. 23-1323 (U.S. June 14, 2024); *accord Leachco*, 103 F.4th at 762-63.

### 1. Respondent's failure to allege causal harm is fatal to its removal-based claims.

Respondent has not alleged any of the facts necessary to establish a right to relief on either of its removal claims because Respondent must show that the challenged removal restrictions actually "cause[d] harm" to it. *Collins v. Yellen*, 594 U.S. 220, 260 (2021). In *Collins v. Yellen*, the Supreme Court held that invalid removal protections are unlike defects in an officer's appointment and do not necessarily show entitlement to a remedy. *Id*. at 258-59. Rather, to obtain relief, litigants must show that an attempted removal failed on judicial review or that the President publicly "express[ed] displeasure with actions taken by" the official with removal protection and "assert[ed] that he would remove the [official] if the statute did not stand in the way." *Id*. at 260.

Subsequently, in *Calcutt v. FDIC*, the Sixth Circuit explained what a challenger must do to satisfy the causal-harm standard established by *Collins*. In that case, the petitioner argued that the statutory removal protections for FDIC Board members and ALJs were unconstitutional and entitled him to vacatur of an adverse FDIC order. The petitioner did not allege that any of these officials prevailed in an attempted removal proceeding or that the President had expressed a desire to remove any of them because he disagreed with their actions. Instead, the petitioner generically asserted that there was "the *possibility* that the FDIC would have taken different actions in his case" had those removal protections not been in place. 37 F.4th at 317; *see also id*. at 318. The Sixth Circuit rejected as insufficient Calcutt's speculative assertion that causal harm "'cannot be ruled out.'" *Id*. at 318 (quoting Calcutt's brief). Because the petitioner "ha[d] not specified the harm that occurred as a result of the allegedly unconstitutional removal

9

restrictions," *id.* at 313, the Sixth Circuit concluded that "*Collins* decisively precludes relief," *id.* at 320.[5]

Every circuit court to have considered the question agrees with *Calcutt* that causal harm is the key inquiry. *See, e.g., Leachco*, 103 F.4th at 755-58 (challengers must demonstrate that unconstitutional removal provision "actually affected the agency's decision or conduct against" them); *CFPB v. Nat'l Collegiate Master Student Loan Tr.*, 96 F.4th 599, 613-16 (3d Cir. 2024) (defendants not entitled to dismissal absent any "link" between challenged removal protection and defendants' case); *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023) (denying relief where petitioner did not assert any possible harm resulting from allegedly unconstitutional removal limitations); *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023) ("Requiring but-for causation in these cases properly matches the constitutional injury to the requested remedy."), *cert. denied*, No. 22-1233, 2024 WL 2709347 (U.S. May 28, 2024); *Bhatti v. Fed. Housing Fin. Agency*, 15 F.4th 848, 854 (8th Cir. 2021) (identifying issue under *Collins* as whether unconstitutional removal restriction "caused compensable harm"); *Decker Coal*, 8 F.4th at 1137 (stating that, under the "controlling" authority of *Collins*, "[a]bsent a showing of harm, we refuse to unwind the [agency] decisions below").

A prominent voice among this chorus of circuit-level opinions is the Fifth Circuit's decision in *Community Financial Services Association of America, Ltd. v. CFPB* ("*CFSA*"). In that case, the Fifth Circuit distilled from *Collins v. Yellen* "three requisites for proving harm" for removal claims: "(1) a substantiated desire by the President to remove the unconstitutionally

---

[5] Although the remedy sought in *Calcutt* was vacatur of order entered at the conclusion of an adjudicatory proceeding, its reasoning extends beyond cases seeking judicial review of final agency action. This is because "[t]he *Collins* inquiry focuses on whether a 'harm' occurred that would create an entitlement to a remedy, rather than the nature of the remedy." 37 F.4th at 316.

insulated actor; (2) a perceived inability to remove the actor due to the infirm provision; and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor." 51 F.4th 616, 632 (5th Cir. 2022), *reversed and remanded on other grounds*, 601 U.S. 416 (2024). In other words, to obtain any relief on a claim alleging the existence of unconstitutional removal restrictions, a challenger must show that "but for the removal restriction" at issue, the President "would have removed" the official in question "and that the [agency] would have acted differently. *Id.* at 633; *accord Crystal Moroney*, 63 F.4th at 180. The Fifth Circuit then applied this test in *Collins v. Department of Treasury*, 83 F.4th 970 (5th Cir. 2023), and affirmed the Southern District of Texas's dismissal of a removal-restrictions challenge because the plaintiffs had failed to satisfy the three *CFSA* prerequisites for establishing harm. In light of these decisions, a challenger who is unable to make the required showings "fail[s] to present sufficient factual allegations to survive a motion to dismiss." *Id.* at 983 n.12.

Here, Respondent has not attempted to establish that the President has "express[ed] displeasure with actions taken by" the ALJ or any Board member, let alone that he has sought to remove them from their positions. *Collins v. Yellen*, 594 U.S. at 259-60. Nor has Respondent alleged that, but for the removal restrictions, "the challenged actions taken by" these officials would not have occurred. *CFSA*, 51 F.4th at 632. As such, Respondent would not be entitled to judgment on the pleadings even if its removal-restrictions arguments have merit, which they do not.

Unable to make the showing required by the binding decisions in *Collins* and *Calcutt* as well as the persuasive decision in *CFSA*, Respondent instead pivots to inapposite rulings in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 190 (2023), and *NLRB v. Noel Canning*, 537 U.S. 513 (2014). Relying on *Axon*, Respondent argues that "a 'here and now' injury exists when a party is

subject to unconstitutional agency authority." [ECF No. 32, PageID.2701]. Respondent concedes that "an adverse administrative ruling *itself* d[oes] not constitute harm," so it instead claims that "the Petition before the Court, and the proceedings that have ensued, are the harm that Respondent is experiencing." [ECF No. 32, PageID.2701].

At the outset, this argument fails because even if the Petition and the proceedings before this Court are cognizable harms, Respondent has not "show[n] that the removal restriction[s] *specifically* impacted the agency actions of which [Respondent] complain[s]." *Calcutt*, 37 F.4th at 314. Respondent offers no evidence—indeed, it does not even allege—that the removal restrictions it challenges had any impact, let alone a causal or but-for impact, on the filing of the Petition or on the positions advanced by Petitioner in this case.[6]

Beyond this fatal flaw, Respondent's reliance on *Axon* is misplaced. The narrow question decided in *Axon* was whether district courts have subject-matter jurisdiction to hear structural constitutional challenges to ongoing agency proceedings despite the existence of review schemes channeling review of final agency action to the courts of appeals. A near-unanimous Supreme Court answered that question in the affirmative because, among other things, the "alleged injury" the challengers faced, though "a bit abstract," was nonetheless "'a here-and-now injury.'" *Axon*, 598 U.S. at 192 (quoting *Seila Law LLC v. CFPB*, 591 U.S. 197, 212 (2020)). But *Axon*'s jurisdictional holding does not abrogate the causal-harm requirement established only two years

---

[6] Under *Collins v. Yellen*, courts must ask whether for-cause protections "inflicted harm." Whether a litigant seeks prospective or retrospective relief "does not effect a court's ability to conduct that inquiry." *Calcutt*, 37 F.4th at 316; *accord CFSA*, 51 F.4th at 631 (explaining *Collins's* "remedial inquiry focused on whether a harm occurred that would create an entitlement to a remedy, rather than the nature of the remedy); *Leachco*, 103 F.4th at 757; *Crystal Moroney*, 63 F.4th at 180–81. Respondent thus cannot evade *Collins* by distinguishing between retrospective and prospective relief, as it is unable to demonstrate the necessary harm to entitle it to any remedy.

earlier in *Collins*. *See Leachco*, 103 F.4th at 759 ("We will follow the Supreme Court's words of

caution when interpreting the same 'here-and-now injury' language from *Axon*—we will not

misunderstand what was said about jurisdiction in *Axon* 'as a holding on a party's entitlement to

relief based on an unconstitutional removal provision.'" (quoting *Collins*, 594 U.S. at 258 n.24));

*see also Collins v. Dep't of the Treasury*, 83 F.4th at 982–84 (holding, after *Axon* was decided,

that failure to allege causal harm is a defect requiring dismissal under Federal Rule of Civil

Procedure 12(b)(6)); *Meta Platforms, Inc. v. FTC*, No. 1:23-cv-03562-RDM, 2024 WL 1121424,

at *9 (D.D.C. Mar. 15, 2024) (explaining that *Axon* "speaks to a very different proposition: It

merely recognizes that being subjected to an agency's unconstitutional exercise of authority

constitutes a present injury"), *appeal docketed*, No. 24-5054 (D.C. Cir. Mar. 15, 2024); *Kim v.

FINRA*, 698 F. Supp. 3d 147, 169 n.19 (D.D.C. 2023) ("*Axon*'s holding addressed whether

district courts have jurisdiction over constitutional claims . . . ."), *appeal docketed*, No. 23-7136

(D.C. Cir. Oct. 19, 2023). Indeed, *Axon* does not even mention *Collins*.

　　　　Respondent additionally argues, in reliance on *NLRB v. Noel Canning*, 573 U.S. 513

(2014), that the Board's actions in this matter "should be deemed a nullity" if Board members are

unconstitutionally protected from removal. [ECF No. 32, PageID.2700]. In *Noel Canning*, the

Supreme Court affirmed a judgment setting aside a final order of the Board because three of the

five Board members had been invalidly appointed under the Recess Appointments Clause. 573

U.S. at 521, 557. Respondent reasons that because the structural infirmities stemming from the

appointment defect in that case warranted relief, so too should the structural infirmities it alleges

here. But unlike cases "involving a Government actor's exercise of power that the actor did not

lawfully possess"—as with an invalidly appointed official—"a properly appointed officer's

insulation from removal does not strip the [officer] of the power to undertake the other

responsibilities of his office." *Collins v. Yellen*, 594 U.S. at 258 n.23; *accord CFSA*, 51 F.4th at

631. Abstract removability challenges concern "the conditions under which those officers might

someday be removed [rather than] the validity of any officer's continuance in office." *Free Enter.*

*Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 508 (2010). Thus, where, as here, the

officers whose actions are challenged were validly appointed, the only inquiry is whether the

allegedly "unconstitutional removal provision inflicted harm." *Collins v. Yellen*, 594 U.S. at 631.

As discussed above, Respondent has not alleged the requisite causal harm.

 Neither *Axon* nor *Noel Canning* is a workaround to the causal-harm framework. And

Respondent has not alleged any facts sufficient to satisfy its burden under *Collins v. Yellen* and

*Calcutt* to show that Board members' or ALJs' removal restrictions have actually caused it harm.

Such failure dooms its motion for judgment on the pleadings, which this Court can deny on this

ground alone. *See Cortes v. NLRB*, No. 1:23-cv-02954, 2024 WL 1555877, at *7 (D.D.C. Apr.

10, 2024) (declining to address the constitutionality of Board members' removal protections

because "the Court could 'dispose of the case' on the harm requirement" (quoting *Bond v. United*

*States*, 572 U.S. 844, 855 (2014))), *appeal docketed*, No. 24-5152 (D.C. Cir. June 10, 2024).

### 2. Removal protections for NLRB ALJs are constitutional.

 This Court need not reach the legal merits of Respondent's ALJ-removability theory

because Respondent has not shown the necessary harm traceable to ALJs' removal protections.

But if it's necessary to reach the issue, Respondent cannot prevail on this claim under controlling

precedent.

 Like all ALJs, NLRB ALJs are afforded a measure of decisional independence through a

statutory provision that allows ALJs across the Executive Branch to be removed from office only

upon a showing of "good cause." 5 U.S.C. § 7521(a). The Supreme Court has long held that

subordinate officials within the Executive Branch, a category which includes "inferior officers" like ALJs, *see Seila Law LLC v. CFPB*, 591 U.S. 207 (2020), can be afforded a measure of protection from removal without unconstitutionally impairing the President's powers under Article II of the Constitution. The "good cause" removal protection that Congress has afforded to ALJs, including the one assigned to Respondent's unfair-labor-practice case, is consistent with those precedents.

In *United States v. Perkins*, 116 U.S. 483 (1886), an inferior officer in the Navy challenged his removal without cause as unlawful, as Congress had provided that such inferior officers could be removed in peacetime only pursuant to a court-martial sentence. *Id.* at 483-84. The Supreme Court agreed, holding that it "ha[d] no doubt" that Congress "may limit and restrict the power of removal" for inferior officers. *Id.* at 485. Nearly one-hundred years later, in *Morrison v. Olson*, 487 U.S. 654 (1988), the Court upheld a "good cause" removal restriction for an independent counsel appointed to investigate and prosecute serious crimes committed by certain high-ranking executive officers. *Id.* at 685-93. *Morrison* did not decide "exactly what is encompassed within the term 'good cause,'" but stressed its understanding that "the Attorney General may remove an independent counsel for 'misconduct.'" *Id.* at 692. Through that removal authority, the Court stated, the President "retains ample authority to assure that the counsel is competently performing his or her statutory responsibilities." *Id.* Although the independent counsel exercised "discretion and judgment" in carrying out his responsibilities, the Court concluded that "the President's need to control the exercise of that discretion [was not] so central

to the functioning of the Executive Branch as to require as a matter of constitutional law that the counsel be terminable at will by the President." *Id.* at 691-92.[7]

Of course, Congress does not have unlimited authority to shield officials wielding executive power from removal. Under Article II, Congress cannot impose any restriction that prevents the President from ensuring that the laws are faithfully executed or "deprive[s] the President of adequate control" over the official's exercise of executive power. *Free Enter. Fund*, 561 U.S. at 508; *see also Morrison*, 487 U.S. at 658. Within those bounds, Congress may regulate the conditions for removal of inferior officers.

Here, however, the statute affording ALJs a measure of removal protection readily satisfies constitutional requirements. Congress created the positions now-known as ALJs to serve as "semi-independent subordinate hearing officers" within agencies. *Ramspeck v. Fed. Trial Exam'rs Conf.*, 345 U.S. 128, 132 (1953) (quotation marks omitted). At the same time, Congress sought to ensure that "the agency retains full power over policy." 2 Paul R. Verkuil et al., Administrative Conference of the United States, Recommendations and Reports: *The Federal Administrative Judiciary* 803 (1992). The Administrative Procedure Act accordingly gives agencies plenary power to review and reverse ALJs' initial decisions. *See* 5 U.S.C. § 557(b). And even under Section 7521(a)'s "good cause" standard, an ALJ can be removed for refusing to follow binding legal or policy judgments announced by the agency, as well as for misconduct or

---

[7] Other recent Supreme Court decisions have likewise acknowledged Congress's power to regulate department heads' removal of inferior officers. *See United States v. Arthrex, Inc.*, 594 U.S. 1 (2021) (selecting a remedy for an Appointments Clause violation that *restored* the removal protections of Executive Branch adjudicators who perform functions similar to those of ALJs); *Seila Law LLC v. CFPB*, 591 U.S. 197, 204 (2020) (recognizing that *Perkins* and *Morrison* establish at least that "Congress could provide tenure protections to certain inferior officers with narrowly defined duties" (emphasis omitted)); *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 493 (2010) (confirming that the Court "has upheld for-cause limitations" on removal of inferior officers).

substantially deficient job performance. Under that arrangement, "policy responsibility remains exclusively with the agency while the public has assurance the facts are found in the first instance by an official not subject to agency coercion." Verkuil, *supra*, at 803.

Consistent with that design, the regulations governing adjudications under the NLRA, such as the unfair-labor-practice proceeding brought against Respondent, assure that the five-seat Board is ultimately responsible for setting policy. The ALJ conducts an administrative hearing, *see* 28 C.F.R. §§ 102.34-.35, and issues a decision containing factual and legal determinations regarding whether a violation has occurred, as well as a recommended order, *id.* § 102.45(a). But, crucially, the ALJ's order is not a final agency order until the Board has had an opportunity to hear and resolve any party's exceptions to the ALJ's "decision or to any other part of the record or proceedings (including rulings upon all motions or objections)." *Id.* § 102.46(a); *see id.* § 102.48. Even an ALJ's interlocutory orders can be immediately reviewed by the Board, if the Board so chooses. *See id.* § 102.26.

This design comports with constitutional requirements, as several courts of appeals have confirmed. The most pertinent decision for this Court to consider is again the Sixth Circuit's decision in *Calcutt*. In that case, the Court of Appeals explained that even if the petitioner could demonstrate causal harm (which he could not and neither can Respondent here), it nonetheless "doubt[ed] Calcutt could establish a constitutional violation from the ALJ removal restrictions." 37 F.4th at 319. The seed of the court's doubt was sown by the Supreme Court's decision in *Free Enterprise Fund*, which invalidated portions of a statutory scheme allowing tenure-protected members of the Securities and Exchange Commission to remove members of the Public Company Accounting Oversight Board ("PCAOB"), but only if an "unusually high standard" was met. 561 U.S. at 503. *Free Enterprise Fund* recognized that such vertical integration of

removal protections can frustrate the President's ability to control the inferior officers shielded by multiple levels of removal protection.[8] But, as the Sixth Circuit observed in *Calcutt*, *Free Enterprise Fund* "took care to omit ALJs from the scope of its holding." 37 F.4th at 319. Indeed, *Free Enterprise Fund* surmised that ALJs could be distinguished from PCAOB members because "many ALJs perform adjudicative rather than enforcement or policymaking functions, or possess purely recommendatory powers." *Id.* (cleaned up). The Sixth Circuit also found persuasive then-Judge Kavanaugh's circuit-level dissent in *Free Enterprise Fund*. That dissent explained that "the for-cause removal protections for ALJs are distinguishable because agencies can choose not to use ALJs in adjudications . . . and many ALJs perform adjudicatory functions that are subject to review by higher agency officials." *Id.*

The Sixth Circuit's well-founded doubts have been shared and expanded upon by other courts. In *Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021), the Ninth Circuit rejected a challenge to the removal restrictions for ALJs within the Department of Labor ("DOL"). The Ninth Circuit concluded that Section 7521(a) was constitutional as applied to those ALJs because, among other things, DOL's ALJs perform "a purely adjudicatory function" rather than "policymaking and enforcement functions," they "cannot sua sponte initiate investigations or commence a . . . case," and Congress did not "mandate[] that the DOL employ ALJs in adjudicating" administrative cases. *Id.* at 1133. Furthermore, the Ninth Circuit saw a significant difference "between § 7521's broad 'good cause' language and the 'unusually high' removal

---

[8] Contrary to Respondent's position, *Free Enterprise Fund* does not establish a categorical rule that multiple levels of removal protection are unconstitutional. Rather, that case held unconstitutional the "highly unusual" and "sharply circumscribed" dual-layer removal protections of the leadership of a regulatory body with policymaking and enforcement powers. 561 U.S. at 505. It "did not broadly declare all two-level for-cause protections for inferior officers unconstitutional." *Decker Coal*, 8 F.4th at 1132.

restrictions" invalidated by *Free Enterprise Fund*. *Id.* at 1135. Just last month, the Tenth Circuit

followed *Decker Coal* in rejecting a challenge to the removal protections of an ALJ employed by

the Consumer Product Safety Commission ("CPSC"), an independent, multi-member federal

agency like the NLRB. *See Leachco*, 103 F.4th at 764. The Tenth Circuit agreed with *Decker*

*Coal* that *Free Enterprise Fund*'s rationale did not apply because the ALJ "performed 'a purely

adjudicatory function,' Congress did not statutorily require that the CPSC use ALJs for

administrative adjudications, and the 'good cause' standard in the provision restricting—but not

precluding—ALJs' removal is a 'lesser impingement' than the standard at issue in *Free*

*Enterprise Fund*." *Id.*[9]

This Court should follow the same reasoning the Sixth, Ninth, and Tenth Circuits have

endorsed and, if it is necessary to reach the issue, uphold NLRB ALJs' removal protections.

NLRB ALJs perform purely adjudicatory functions[10]; the Board can decide to hear cases on its

own without ALJ participation, *see* 29 U.S.C. § 160(b); ALJs' rulings are always subject to

review by the Board; and "Congress did not overstep" by making ALJs exceedingly difficult to

remove, *Decker Coal*, 8 F.4th at 1133.[11]

---

[9] Respondent relies heavily on a decision issued by the only circuit court that has reached a
different conclusion. *See Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *aff'd on other
grounds*, 144 S. Ct. 2117 (2024). But "that court seemed to disregard the distinction between the
PCAOB members in *Free Enterprise Fund*, who exercised executive functions, and ALJs, who
perform adjudicatory functions. Supreme Court precedent establishes that this distinction
matters." *Leachco*, 103 F.4th at 764 (citation omitted).

[10] *See* 29 U.S.C. § 153(d) (vesting the General Counsel with "final authority" to investigate
charges, issue complaints, and prosecute violations before the Board); 29 U.S.C. § 156 (vesting
the five-seat Board with the power to engage in rulemaking).

[11] The removal protections afforded to members of the MSPB, which is empowered to review
any determination that there is "good cause" to remove an ALJ, *see* 5 U.S.C. § 7521(a), do not
change this analysis. The Supreme Court has repeatedly upheld statutory removal restrictions
that provide for review by the federal courts, whose judges are not removable by the President *at
all*. *See Morrison*, 487 U.S. at 663-64; *Perkins*, 116 U.S. at 484-85. If Congress could empower a

Respondent has little to offer in response except a weak attempt to limit *Calcutt*'s reach. Respondent argues that because NLRB ALJs allegedly "have a greater level of decisional authority than the FDIC ALJs addressed" in *Calcutt*, the President must have "greater authority to satisfy the Take Care Clause." [ECF No. 36, PageID.2698]. But *Calcutt* makes clear that the permissibility of ALJs' removal protections "centers on their status as adjudicatory officials that issue non-final recommendations to an agency." 37 F.4th at 320. In this regard, NLRB ALJs and FDIC ALJs are indistinguishable. In any event, Respondent overstates the degree of independence with which NLRB ALJs operate. The Board exercises myriad forms of control over its judges. For example, it need not assign a given case to a judge, but instead is empowered to preside over a hearing itself. *See* 29 U.S.C. § 160(b). If a case is assigned to a judge, the Board is statutorily obligated to review the judge's decision and recommended order upon the filing of valid exceptions. *Id.* The Board may reverse a finding made by the judge even if no party has filed a relevant exception. *Hedstrom v. NLRB*, 629 F.2d 305, 315-16 (3d Cir. 1980). Such review extends to any rulings made by the judge, 29 C.F.R. § 102.46(a), and the Board may withdraw such functions from its judges or modify its regulations, 29 U.S.C. § 156.

Accordingly, for these reasons, Respondent is not entitled to judgment on the pleadings as to its ALJ-removability argument.

---

federal court to review the Attorney General's judgment that good cause exists for firing an independent counsel, *Morrison*, 487 U.S. at 687-693 & n.33, it may empower the MSPB to review an agency's judgment that good cause exists for removing an ALJ. Moreover, as the Sixth Circuit observed in *Calcutt*, "the *Free Enterprise Fund* exception for ALJs" does not depend "on how many levels of removal protections they enjoy." 37 F.4th at 320.

### 3. Removal protections for NLRB Board members are constitutional under *Humphrey's Executor* and recent precedent.

Respondent's Article II challenge to Board member removability also fails as a matter of law. For over a century, Congress has created independent regulatory agencies led by commissions whose members were appointed by the President, confirmed by the Senate, served for fixed terms, and were removable only for cause. *See* Act of Feb. 4, 1887, ch. 104, § 11, 24 Stat. 379, 383 (creating the Interstate Commerce Commission). The Supreme Court has never struck down these for-cause removal protections.

The Court first approved Congress's creation of these removal protections in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). In that case, the Court held that it was not "an unconstitutional interference with the executive power of the President," *id.* at 626, for Congress to make members of the Federal Trade Commission (FTC) removable only "for inefficiency, neglect of duty, or malfeasance in office." *Id.* at 620 (quoting Federal Trade Commission Act, ch. 311, § 1, Pub. L. No. 63-203, 38 Stat. 717, 718 § 1 (1914) (codified at 15 U.S.C. § 41)). The Court identified features like the FTC commissioners' seven-year, staggered terms as evidence of Congress's intent to "create a body of experts who shall gain experience by length of service," which "would not be subject to complete change at any one time." *Id.* at 624-25. In the Court's view, this structure would logically be served by "length and certainty of tenure." *Id.* at 626. The core holding of *Humphrey's Executor* therefore recognizes that—at the very least—Congress can insulate members of commissions like the FTC from unencumbered presidential removal.

Then, in *Wiener v. United States*, 357 U.S. 349 (1958), the Supreme Court inferred removal protections for members of the War Claims Commission. The Court grounded its decision in the fact that the Commission was an "adjudicatory body," *id.* at 356, that performed "tasks [that] require[d] absolute freedom from Executive interference." *Id.* at 353; *see also*

21

*Morrison*, 487 U.S. at 691 n.30 (upholding tenure protections as "necessary to the proper functioning" of "an official performing 'quasi-judicial' functions"). Furthermore, the Court explained in *Wiener* that its holding embraced "[t]he philosophy of *Humphrey's Executor*, in its explicit language as well as its implications." 357 U.S. at 356.

The Supreme Court's more recent removal-protection jurisprudence likewise acknowledges and affirms the core holding of *Humphrey's Executor*. As previously mentioned, in *Free Enterprise Fund*, the Court invalidated uniquely restrictive, multilevel tenure protections for members of the PCAOB, where it was presumed that the SEC commissioners responsible for removing the PCAOB members were themselves removable only for cause. 561 U.S. at 484. In so doing, the Court expressly acknowledged that "Congress can, under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may not remove at will but only for good cause." *Id.* at 483. The Court expressly declined to revisit *Humphrey's Executor*, stating "[t]he point is not to take issue with for-cause limitation in general." *Id.*

Critically, the *Free Enterprise Fund* Court assumed in its analysis that the SEC commissioners could be removed only for cause. *Id.* at 487. This assumption—underlying the entire *Free Enterprise Fund* removal-protections analysis—makes sense only if removal protections for the SEC commissioners are constitutional. And the assumption was hardly inconsequential; without it, the PCAOB members would not have been as insulated from presidential oversight and control. *See id.* at 484. In holding that the multilevel removal protections for the PCAOB violate separation-of-powers principles, the Court reasoned that such a structure prevents the President from "hold[ing] the Commission[ers] fully accountable for the Board's conduct, to the same extent that he may hold the Commission accountable for everything

else that it does." *Id.* at 496; s*ee also id.* at 530 (Breyer, J., dissenting) (citing *Humphrey's Ex'r*, 295 U.S. at 602) (noting that the majority opinion "concedes that the President's control over the Commission is constitutionally sufficient"). The Court's holding thus rests upon a crucially important premise: even though the SEC commissioners are protected from at-will removal, the President can still hold them accountable consistent with his Article II responsibilities.

The Supreme Court's acknowledgement of the core holding of *Humphrey's Executor* is even more apparent in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), in which the Court struck down for-cause removal protections for the Director of the CFPB. *Id.* at 2192. The Court began by noting the constitutionality of "expert agencies led by a *group* of principal officers removable by the President only for good cause." *Id.* (emphasis in original). The Court then contrasted the CFPB's single-Director structure with such multimember agencies, asserting that the CFPB's Director "cannot be described as a 'body of experts' and cannot be considered 'non-partisan' in the same sense as a group of officials drawn from both sides of the aisle." *Id.* at 2200 (quoting *Humphrey's Ex'r*, 295 U.S. at 624). As such, the Court described the CFPB's constitutional defect as a structure that "vest[ed] significant governmental power in the hands of a single individual accountable to no one," *id.* at 2203, for the duration of a five-year term that is long enough to prevent a sitting President from ever appointing a preferred Director. *Id.* at 2204; *see also Collins v. Yellen*, 594 U.S. at 256 (explaining that "the Constitution prohibits even 'modest restrictions' on the President's power to remove the head of an agency with a single top officer" (quoting *Seila Law*, 140 S. Ct. at 2205)).

Far from undermining *Humphrey's Executor*, the Court explicitly stated that even though it was striking the Director's removal protections, its analysis "d[id] not foreclose Congress from pursuing alternative responses to the problem—for example, converting the CFPB into a

multimember agency." *Id.* at 2211. This is especially noteworthy, given that the petitioner in *Seila Law* argued in the alternative that *Humphrey's Executor* should be overruled. *See* Pet'r's Br., *Seila Law*, 2019 WL 6727093 at *31 (Dec. 9, 2019). Thus, the Court continued to recognize and embrace *Humphrey's Executor*'s core holding, going so far as to suggest that the very design at issue in *Humphrey's Executor* could fix the constitutional problem implanted within CFPB's structure.

Against the legal framework established by the Court's recent removal-protections cases, it is hardly surprising that at the end of 2023, in *Illumina, Inc. v. FTC*, 88 F.4th 1036 (5th Cir. 2023), the Fifth Circuit rejected a challenger's attempt to overrule *Humphrey's Executor*. In that case, the challenger claimed that because the FTC's powers have grown significantly since 1935, the Supreme Court's holding in *Humphrey's Executor* no longer controls. *Id.* at 1047. The Fifth Circuit refused to accept the challenger's reasoning. Instead, it held that "although the FTC's powers may have changed since *Humphrey's Executor* was decided, the question of whether the FTC's authority has changed so fundamentally as to render *Humphrey's Executor* no longer binding is for the Supreme Court, not us, to answer." *Id.*

The Fifth Circuit subsequently upheld the for-cause removal protections of another multimember agency, the Consumer Product Safety Commission (CPSC). In *Consumers' Research*, the Fifth Circuit held that *Humphrey's Executor*'s rationale extends beyond the FTC and "still protects any 'traditional independent agency headed by a multimember board.'" 91 F.4th at 352 (quoting *Seila Law*, 140 S. Ct. at 2193). The court reasoned that even though the CPSC "exercises substantial executive power (in the modern sense)," its structure and the commissioners' statutory removal protections, which are identical to those enjoyed by Board

members, did not violate the separation of powers required by the Constitution. *Id.* at 353-54.[12] Based on *Consumers' Research* persuasive reasoning, both the Tenth Circuit and the District of Massachusetts recently rejected similar challenges to CPSC commissioners' removal protections. *See Leachco*, 103 F.4th at 762-63; *United States v. SunSetter Prods. LP*, No. 23-cv-10744-ADB, 2024 WL 1116062, at *3-4 (D. Mass. Mar. 14, 2024).

Just like these other courts, this Court should follow *Consumers' Research*'s directly applicable analysis. Put simply, the NLRB's structure fits squarely into *Humphrey's Executor*'s permission of removal protections for multimember, fixed-term boards and commissions. Because *Humphrey's Executor* remains good law, Board members' removal protections must be constitutional. *Accord Consumers' Rsch.*, 91 F.4th at 356 ("*Humphrey's* does settle the question."). *Compare SEC v. Blinder, Robinson & Co.*, 855 F.2d 677, 682 (10th Cir. 1988) (explaining that the President's power to appoint SEC commissioners, remove them for cause, and choose the chairman, who serves in that position at the pleasure of the President, gives him sufficient control "to insure the securities laws are faithfully executed").

Respondent nonetheless argues that Board members are unconstitutionally insulated from removal. In doing so, Respondent reads into precedent a novel principle that an agency's principal officers cannot be protected from removal if the officers wield "substantial executive power." [ECF No. 36, PageID.2698]. However, as demonstrated by *Consumers' Research* and

---

[12] CPSC possesses the power "to promulgate safety standards and ban hazardous products, … to launch administrative proceedings, issue legal and equitable relief, and [to] commence civil actions in federal courts," including actions seeking injunctive relief and even those seeking civil monetary penalties. *Consumers' Rsch.* at 346. *See also id.* at (citing 15 U.S.C. §§ 2056(a), 2057, 2064, 2076, 2069(a)–(b), 2071(a)); *see also id.* at 357 (Jones, J., concurring in part and dissenting in part) (noting that the CPSC "imposes heavy penalties for violations of its charging statutes, and commences civil actions in federal court seeking injunctive relief and monetary penalties").

the decisions that have followed it, Respondent misreads Supreme Court precedent and necessarily asks that this Court overrule *Humphrey's Executor*, which it cannot do.

In any event, Respondent's argument fails on its own terms. Although the Board's powers are significant in some respects, Congress has implemented two structural features that make the Board almost "unique" among its regulatory peers. *NLRB v. FLRA*, 613 F.3d 275, 281 n.*(D.C. Cir. 2010). First, the Board depends entirely on outside entities to bring matters to its attention through the filing of unfair-labor-practice charges or representation petitions before it can engage in adjudication. *See generally* 2 The Developing Labor Law: The Board, the Courts, and the National Labor Relations Act ch. 31.III.B (John E. Higgins, Jr., et al., eds., 7th ed. 2017) ("The Board may not act until an unfair labor practice charge is filed with a regional office of the Board . . . ."). Second, the NLRB's politically accountable General Counsel is independent of the Board and is ultimately responsible for all unfair-labor-practice investigations and prosecutions the NLRB undertakes. *See* 29 U.S.C. § 153(d); *NLRB v. Aakash, Inc.*, 58 F.4th 1099, 1104 (9th Cir. 2023) ("[T]he President may remove the Board's General Counsel at any time and for any reason."); *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 445 (5th Cir. 2022) (same). These structural features contextualize the limited executive power the five-seat Board exercises in comparison to other multimember boards and commissions.[13] Viewed in this light, there are simply no grounds for concluding that Board members somehow exercise more "substantial"

---

[13] Respondent points broadly to 29 U.S.C. §§ 159 and 160 to claim that "the NLRB wields substantial prosecutorial, rulemaking, policymaking, and adjudicative authority," without describing how the NLRB is distinct from traditional independent agencies headed by a multimember board. [ECF No. 36, PageID.2699]. Additionally, the Board's "prosecutorial" authority is limited to authorizing Section 10(j) petitions. Otherwise, the NLRA grants full prosecutorial powers to the General Counsel.

executive power than FTC or CPSC commissioners whose removal protections have been repeatedly upheld by the Supreme Court and various lower courts.

In a final salvo, Respondent attempts to distinguish this case from *Humphrey's Executor* by claiming that Board members' removal protections are "unusually strict," [ECF No. 36, PageID.2700], presumably because Board members can be removed "for neglect of duty or malfeasance in office," 29 U.S.C. § 153(a), but not for inefficiency. While Congress could have added "inefficiency" as an *additional* ground for Board member removal to check the effects of the patronage system (as it did with the FTC), this goes beyond what is required by the Constitution's Take Care Clause. *See* Jane Manners & Lev Menand, *The Three Permissions: Presidential Removal and the Statutory Limits of Agency Independence*, 121 Colum. L. Rev. 1, 68–69, n.383 (2021). Neglect of duty and malfeasance in office are listed as the sole grounds for removal of various other federal officers, *id*. at 69, including CPSC commissioners, to whom *Humphrey's Executor* applies. *See Consumers' Rsch.*, 91 F.4th at 346; *Leachco*, 103 F.4th at 762-63; *SunSetter Prods.*, 2024 WL 1116062, at *3-4. The NLRA's removal standard thus accommodates the President's constitutional duty to ensure that the law is faithfully executed

For these reasons, Respondent's Article II challenge to Board members' removal protections fails as a matter of law. [14]

## CONCLUSION

This Court should deny Respondent's motion for judgment on the pleadings.

---

[14] Respondent attempts to reserve an argument that the "Board's actions would be unconstitutional pursuant to the Seventh Amendment" should the Board seek certain relief in the unfair-labor-practice case. [ECF No. 36, PageID.2700, n.2]. However, a hypothetical argument contained only in a footnote does not merit the Court's attention. *See, e.g., U.S. v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 856 (6th Cir. 2005); *Becherer v. Merrill Lynch*, 43 F.3d 1054, 1058-59 (6th Cir. 1995) (an issue only "drop[ped]" in a footnote and not raised in the statement of issues or argument section of a brief is not properly raised before the Court of Appeals).

Dated this 29th day of July 2024 in Grand Rapids, Michigan.

Respectfully submitted,

/s/ *Elizabeth Kerwin*
Elizabeth Kerwin
Regional Director
National Labor Relations Board, Region 7
Patrick V. McNamara Building
477 Michigan Avenue, Room 05-200
Detroit, MI 48226

Erikson C. N. Karmol
Regional Attorney, Region 7

Colleen J. Carol
Resident Officer, Region 7

Patricia A. Fedewa
Senior Trial Attorney, Region 7

/s/ *Steven E. Carlson*
Counsel for Petitioner
Steven E. Carlson
National Labor Relations Board, Region 7
Gerald R. Ford Federal Building
110 Michigan St., NW, Room 299
Grand Rapids, MI 49503-2363
Telephone: 616-930-9160
E-Mail: Steven.Carlson@NLRB.gov
Bar No. P58196

-and-

Kevin P. Flanagan
Deputy Assistant General Counsel

Grace L. Pezzella
Attorney

National Labor Relations Board
Contempt, Compliance, and
Special Litigation Branch
1015 Half Street, S.E.
Washington, DC 20570

**CERTIFICATE OF SERVICE**

The undersigned certifies that on July 29, 2024, copies of the foregoing document were served upon all attorneys of record via ECF filing.

/s/ *Steven E. Carlson*
Steven E. Carlson
National Labor Relations Board, Region 7
Gerald R. Ford Federal Building
110 Michigan St., NW, Room 299
Grand Rapids, MI 49503-2363
Telephone: 616-930-9160
E-Mail: Steven.Carlson@NLRB.gov
Bar No. P58196